Beatty et al., Appellants, *v.*
Akron City Hospital et al., Appellees.

[Cite as Beatty v. Akron City Hospital (1981),
67 Ohio St. 2d 483.]

(No. 80-1194—Decided August 12, 1981.)

484

*Messrs. Segedy & Umbaugh* and *Mr. David G. Umbaugh,* for appellants.

*Messrs. Roetzel & Andress, Mr. K. Richard Aughenbaugh* and *Mr. Richard R. Strong,* for appellees.

HOLMES, J.

I.

R. C. 2711.21 provides for the establishment of an arbitration board to hear medical claims.[1] The arbitration board is to

---

[1] R. C. 2711.21 provides as follows:

"(A) Upon the filing of any medical claim as defined in division (D)(3) of section 2305.11 of the Revised Code, the controversy shall be submitted to an arbitration board consisting of three arbitrators to be named by the court. The arbitration board shall consist of one person designated by the plaintiff or plaintiffs, one person designated by the defendant or defendants, and a person designated by the court. The person designated by the court shall serve as the chairman of the board. Each member of the board shall receive a reasonable compensation based on the extent and duration of actual service rendered, and paid in equal proportions by the parties in interest. In a claim accompanied by a poverty affidavit, the cost of the arbitration shall be borne by the court.

"(B) The arbitration proceedings shall be conducted in accordance with sections 2711.06 to 2711.16 of the Revised Code insofar as they are applicable. Such proceedings shall be conducted in the county in which the trial is to be held.

consist of three arbitrators, one person designated by the plaintiff, or plaintiffs, one person designated by the defendant, or defendants, and one person designated by the court. The person designated by the court shall serve as chairman. Under the statute, any "medical claim" as defined in R. C. 2305.11(D)(3) shall mandatorily be submitted to the arbitration board.

The arbitration proceedings shall, according to subsection (B) of this statute, be conducted in accordance with R. C. 2711.06 to 2711.16 insofar as they are applicable.

R. C. 2711.21(C), the section particularly questioned here, provides for the submission of the arbitrators' report as evidence in a jury trial. Accordingly, it is provided in this subsection that the decision of the arbitration board is not binding and, if not accepted by all parties, the pleadings are amended to show both the fact that the controversy was submitted to arbitration, and the board's decision. The decision of the board and any written dissenting opinion is admissible in evidence at trial upon the offer of any party if the court conducts a review of the arbitration decision and determines that the board's finding is not clearly erroneous and is in accordance with applicable law, and that the proceedings were fairly conducted and were without prejudice to either party. A party who has not offered the decision in evidence may subpoena the members of the board for cross-examination at trial.

---

"(C) If the decision of the arbitration board is not accepted by all parties thereto, the pleadings shall be amended to aver both the fact that the controversy was submitted to an arbitration board and the decision of the arbitration board. The decision of the arbitration board, and any dissenting opinion written by any board member, shall be admitted into evidence at trial upon the offer of any party, if the court conducts a review of the arbitration decision and any other relevant information submitted by the parties and concludes that:

"(1) The findings of fact by the arbitration board were not clearly erroneous;

"(2) The decision is in accordance with applicable law;

"(3) The procedures required for conducting the hearing and rendering the decision were followed fairly and properly without prejudice to either party.

"(D) Any party who has not made the offer stated in division (C) of this section may subpoena any member or members of the arbitration board for purposes of cross-examination.

"(E) Nothing in this section shall be construed to limit the right of any person to enter into an agreement to arbitrate a controversy underlying a medical claim or to be bound by the decision of the arbitrators."

The section further provides that any person may enter into an agreement to arbitrate a controversy concerning a medical claim or to be bound by the decision of the arbitrators.

In this appeal, the appellants basically present the same propositions of law as were embodied within their assignments of error below, *i.e.*, that R. C. 2711.21 violates the right to trial by jury as guaranteed by Section 5, Article I of the Ohio Constitution and Civ. R. 38(A), by delegating the jury's fact-finding role to a panel of arbitrators. Also, that this section violates the constitutional guarantee of equal protection by treating medical claims in a judicially different manner, there being no state interest sufficiently compelling to justify such different treatment.

In reviewing a great deal of reported case law and commentary throughout the United States revolving about the issues of the constitutionality of enactments providing for the arbitration of malpractice claims, it would appear that the Supreme Court of this state is among the few that have not had the opportunity to decisionally address these questions.

There having been a seeming plethora of material written on these constitutional issues, our commentary shall not be extensive. We affirm the Court of Appeals, and hold that R. C. 2711.21 is constitutional.

Appellants claim that R. C. 2711.21 violates a medical claimant's constitutional right to a jury trial by virtue of the fact that any medical claim may mandatorily be submitted to an arbitration panel, and the board's decision admitted in evidence at trial. Appellants argue that the jury, thus being presented with the board's finding, "may well choose to rely on that decision, rather than its own."

We are not persuaded by appellants' argument in this regard. The scheme of the statute does not present the issues to the jury in a manner by which they would be persuaded or influenced by one side or the other in the litigation. First, the statute provides fairly and reasonably that each party select a member of the arbitration board, and the third is to be appointed by the court. The section does not mandate, nor prohibit, any certain background or expertise of the individual members. If the parties, or the judge, wish to appoint a professional member, such as a doctor, an attorney, an engineer,

etc., depending upon necessity or desire, the appointing party may accordingly do so.

Further, analyzing the reasonableness of the statutory scheme here, it should be noted that the arbitrators' decision, if admitted at trial at all, is just one facet of an adversarial proceeding where each party may, as in any other proceeding, introduce any admissible evidence by way of witnesses' testimony and exhibits.

Additionally, the statute provides for a number of safeguards to the litigants in the submission of the arbitrators' decision to the jury. Under the section, the board's decision is admissible only if the trial court concludes that the hearing and decision are free from prejudice to either party. Additionally, the statute specifically affords the non-offering party the right to subpoena and cross-examine any of the arbitrators during the trial. No similar right is provided the offering party.

The main thrust of the appellants' argument relating to the claimed denial of free and untrammeled jury consideration of the issues is that the jury would impute unwarranted importance to the arbitration decision. We conclude that the jury would not be so inclined. We believe that the jury will continue to listen to, and consider, the testimony of all the witnesses, assess the demeanor and credibility of these witnesses, personally evaluate all the evidence adduced, and not give undue regard to the report or decision of the arbitrators which is, by this section of law, made just one part of all the evidence that may be adduced.

In the latter regard, the Supreme Court of Nebraska, in *Prendergast* v. *Nelson* (1977), 199 Neb. 97, 256 N.W. 2d 657, at 109, in holding that Nebraska's Hospital-Medical Liability Act's provision for panel review and the admissibility of the panel's report were constitutional, stated:

"Defendant contends the medical review panel interferes with the constitutional right to trial by jury because the report which may be introduced in evidence, if adverse to the claimant, adversely affects his ability to obtain a jury verdict. The converse would then also be true. If the report was adverse to the medical care provider, it would promote the claimant's action. It is a two-way street which equally affects the parties on both sides. We do not accept defendant's implication that a

jury could not or would not evaluate a medical review panel's recommendation with objectivity, or follow the trial court's instructions regarding the weight to be given it. Our present experience with expert witnesses certainly indicates otherwise."

Also in point on the claim that submitting the arbitration board's decision as an element of evidence would be an undue influence on the jury, the court, in the early case of *Halpern* v. *Gozan* (1976), 85 Misc. 2d 753, 759, 381 N.Y. Supp. 2d 744, stated:

"But one asks: Despite all of the opportunities for examination and exploration of the recommendation, can it be said realistically that a jury could render a verdict inconsistent with the panel's findings? Or stated conversely: Would not the impact of the recommendation be so overpowering as to remove *de facto* the essential elements of fairness and openmindedness which are so crucial to the total fabric of our jury system, thereby infecting it with prejudicial taint? The response to both questions remains the same. For if the trial court instructs the jury with clarity and simplicity, their true roles as the exclusive finders of fact will prevail.***With the proper instructions by the court, there could be no constitutional infirmity to contaminate the purity of the jurors' prerogatives.

"Historically, jurors for the most part have proven their independence. They guard their roles with a unique jealousy. They accept with obvious pride the admonitions of the trial court that they are 'sole judges of the facts.'***"

See, also, *Comiskey* v. *Arlen* (1976), 55 App. Div. 2d 304, 390 N.Y. Supp. 2d 122, affirmed on other grounds (1977), 43 N.Y. 2d 696, 401 N.Y. Supp. 2d 200.

In a similar vein, the Supreme Court of the United States, in *Meeker* v. *Lehigh Valley R.R. Co.* (1915), 236 U. S. 412, held that a statutory provision making the findings and order of the Interstate Commerce Commission *prima facie* evidence of facts therein stated, in a subsequent civil suit to enforce payment as directed in the commission's order, did not infringe the right of trial by jury. The court stated, at page 430, in its opinion:

"This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either

court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents. Nor does it in anywise work a denial of due process of law."

Upon a review of the cases and pertinent legal commentary, it appears that a substantial majority of state and federal courts addressing the constitutionality of similar statutes have found no infringement of constitutional rights, and have specifically rejected arguments that the admissibility of the decisions of arbitration boards or panels in malpractice cases violates an individual's right to a fair and impartial jury. Exemplary of such cases are the following: *Seoane* v. *Ortho Pharmaceuticals, Inc.* (E.D. La. 1979), 472 F. Supp. 468, Louisiana statute requiring review of claims of medical malpractice by a review panel, under which law the opinion of the panel is admissible at any subsequent trial but is not conclusive, does not deny plaintiff a trial by jury; *Eastin* v. *Broomfield* (1977), 116 Ariz. 576, 570 P. 2d 744, mandatory referral of claim to panel and introduction of panel findings in evidence at subsequent trial not violation of right to trial by jury; *Everett* v. *Goldman* (La. 1978), 359 So. 2d 1256, mandatory use of medical review panel violates neither equal protection nor substantive due process; *Attorney General* v. *Johnson* (1978), 282 Md. 274, 385 A. 2d 57, appeal dismissed, 439 U. S. 805, mandatory use of health claims arbitration panel and admissibility and presumptive correctness of panel finding at subsequent trial not violation of right to jury trial; *Prendergast* v. *Nelson, supra,* use of review panel and admissibility of report at subsequent trial not violation of right to jury trial; *State, ex rel. Strykowski,* v. *Wilkie* (1978), 81 Wis. 2d 491, 261 N.W. 2d 434, mandatory patients' compensation panel review of all medical malpractice claims and admissibility of panel findings at subsequent trial not violation of right to jury trial; *DiAntonio* v. *Northampton-Accomack Memorial Hospital* (C.A. 4 1980), 628 F. 2d 287, distinct treatment of medical claimants under Virginia Medical Malpractice Act not a denial of equal protection and admissibility of panel finding not a violation of right to jury trial; *Johnson* v. *St. Vincent Hospital, Inc.,* (Ind. 1980), 404 N.E. 2d 585, submission of claim to medical panel did not violate right to jury trial or access to courts, Act consistent with equal pro-

tection and prohibitions on special legislation, recovery limitation consistent with state and federal due process and equal protection and did not violate right to jury trial, and limitations on pleading and practice in court not contrary to equal protection and due process; *Hines* v. *Elkhart General Hospital* (N.D. Ind. 1979), 465 F. Supp. 421, affirmed (C.A. 7, 1979), 603 F. 2d 646, Indiana Medical Malpractice Act did not violate plaintiff's right to trial by jury and did not violate equal protection clause.

Also, it appears that the legal commentators generally agree that admissibility of a panel award does not deny the right to jury trial. See Redish, Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications, 55 Tex. L. Rev. 759, 793 (1977); Lenore, Mandatory Medical Malpractice Mediation Panels—A Constitutional Examination, 44 Ins. Counsel J. 416, 422 (1977); Annotation, 80 A.L.R. 3d 583.

We are in agreement with the conclusion of these other state courts that the admissibility of the arbitration decision, as provided for pursuant to R. C. 2711.21, is compatible with the right to a fair and impartial jury. The submission of such decision only provides additional evidence to be considered by the jury. The arbitration panel does not decide the case. The net effect of the panel's decision is to provide the jury with an additional expert opinion by way of panel decision. In this respect, with appropriate handling of such by the trial court, it should be no different from any other expert testimony received at trial. The jury should still remain the final arbiter of all the factual issues presented.

As appropriately stated by the Wisconsin Supreme Court in *State, ex rel. Strykowski,* v. *Wilkie, supra,* at pages 528-529:

"The proper application of this rule, as with any rule of evidence, is the responsibility of the trial court. No boiler plate jury instruction can be drafted to cover all factual situations. However, the trial court shall instruct the jury with clarity and simplicity to the end that the jurors are impressed with the fact that the panel's findings and order are in no way binding upon the jury, but are to be accorded such weight, and such weight only, as the jury may choose to give them. The trial court shall further instruct the jury to the effect that the jury

remains the final arbiter of the issues raised and the facts presented and that its determination, based upon its consideration of *all* the evidence, will prevail." (Emphasis *sic*.)

We conclude that the procedures as provided in R. C. 2711.21(C) do not violate an individual's right to a civil jury trial as guaranteed by Section 5, Article I of the Ohio Constitution.

## II.

The appellants' second proposition of law is that R. C. 2711.21 violates the constitutional guarantee of equal protection by treating medical malpractice claims in a judicially different manner than other tort claims; and that there is no state interest sufficiently compelling to justify such different treatment.

It is a fundamental principle that the equal protection guarantees of neither the Fourteenth Amendment to the United States Constitution, nor Section 2, Article I of the Ohio Constitution prohibit all legislative classification in that it may be readily perceived that there is, to some degree, a classification in most enactments of legislative bodies, both federal and state. Accordingly, it was stated by this court, in *Kinney* v. *Kaiser Aluminum & Chemical Corp.* (1975), 41 Ohio St. 2d 120, at 123, that:

"The limitations placed upon governmental action by the Equal Protection Clauses of the Ohio and United States constitutions are essentially identical. See *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143, 205 N.E. 2d 363; *State, ex rel. Struble,* v. *Davis* (1937), 132 Ohio St. 555, 9 N.E. 2d 684. Although equal protection of the laws does not totally prevent legislative classification, it does require the existence of reasonable grounds for making a ·distinction between those within and those outside a designated class. *State* v. *Buckley* (1968), 16 Ohio St. 2d 128, 243 N.E. 2d 66; *Porter* v. *Oberlin, supra.* The 'reasonableness' of a statutory classification is dependent upon the purpose of the Act. *Carrington* v. *Rash* (1964), 380 U. S. 89; *McLaughlin* v. *Florida* (1965), 379 U. S. 184.* * *"

Another fundamental principle or test must be applied where equal protection standards are being questioned and considered. As pointed out by this court in *Bd. of Edn.* v.

*Walter* (1979), 58 Ohio St. 2d 368, the "two-tiered test," as has been applied by the federal courts, is the appropriate method to determine legislative compliance with equal protection standards. In explanation, this court stated, at page 373, in the opinion:

"Simply stated, the test is that unequal treatment of classes of persons by a state is valid only if the state can show that a rational basis exists for the inequality, unless the discrimination impairs the exercise of a fundamental right or establishes a suspect classification. See, *e.g., McGowan* v. *Maryland* (1961), 366 U. S. 420, for the traditional scrutiny test; see, *e.g., Shapiro* v. *Thompson* (1969), 394 U. S. 618; *Harper* v. *Virginia Bd. of Elections* (1966), 383 U. S. 663; *Griswold* v. *Connecticut* (1965), 381 U. S. 479, for a discussion of 'fundamental interest'; and see, *e.g., Graham* v. *Richardson* (1971), 403 U. S. 365; *Loving* v. *Virginia* (1967), 388 U. S. 1; *Oyama* v. *California* (1948), 322 U. S. 633. If the discrimination infringes upon a fundamental right, it becomes the subject of strict judicial scrutiny and will be upheld only upon a showing that it is justified by a compelling state interest. That is, once the existence of a fundamental right or a suspect class is shown to be involved, the state must assume the heavy burden of proving that the legislation is constitutional. See, *e.g., Eisenstadt* v. *Baird* (1972), 405 U. S. 438, 447, footnote 7; *Dunn* v. *Blumstein* (1972), 405 U. S. 330, 342; *Memphis Am. Fed. of Teachers, Local 2032* v. *Bd. of Edn.* (C.A. 6, 1976), 534 F. 2d 699; *Tanner* v. *Weinberger* (C.A. 6, 1975), 525 F. 2d 51, 54.***"

We have previously held herein that the enactment of R. C. 2711.21, as a part of the Medical Malpractice Act, does not deny the individuals bringing medical claims actions the fundamental right of a jury trial. Further, within the context of the issues raised in this appeal, we perceive no establishment of a suspect classification. Therefore, we conclude that the standard of strict judicial scrutiny would not be applicable here.

The test applicable here is that of traditional scrutiny which was applied in *Allied Stores of Ohio* v. *Bowers* (1959), 358 U. S. 522, and alluded to in *Bd. of Edn.* v. *Walter, supra,* as follows, at page 376:

"Under the traditional test of equal protection, unequal treatment of classes of persons by a state is valid if the state can show that a rational basis exists for the inequity. Ordinarily, under the rational basis requirement, any classification based 'upon a state of facts that reasonably can be conceived to constitute a distinction, or differences, in state policy***' will be upheld. *Allied Stores of Ohio* v. *Bowers* (1959), 358 U. S. 522, 530."

Yet another very basic principle that has to be applied in a review of legislation claimed to be unconstitutional for any reason, including that of unlawful classification, is the presumption of constitutionality of enactments of the General Assembly. Accordingly, it was stated by this court in *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, at pages 161-162, as follows:

"However, when an enactment of the General Assembly is challenged, the challenger must overcome a strong presumption of constitutionality. See *American Cancer Society, Inc.,* v. *Dayton,* 160 Ohio St. 114, 121 (1953). The legal duty imposed upon the judiciary was succinctly stated in paragraph one of the syllabus in *State, ex rel. Dickman,* v. *Defenbacher, Dir.,* 164 Ohio St. 142 (1955):

" 'An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'

"That duty applies both to the General Assembly of Ohio and to the federal Congress. However, it should be noted that the federal Constitution is a *grant* of power to the Congress, while the state Constitution is primarily a *limitation* on legislative power of the General Assembly. It follows that the General Assembly may pass any law unless it is specifically prohibited by the state or federal Constitutions.***" (Emphasis *sic*.)

It is against this standard that we must determine if a violation of the equal protection clauses of the Ohio or the United States Constitution exists. In this determination we must first look for any expressions of the legislative purpose in the passage of such an Act. Ample indicia of such a purpose

are to be found not only in the bill containing the relevant provision, R. C. 2711.21, but also in legislative studies, commentaries and reports.[2]

Section 8 of Am. Sub. H. B. No. 682·(136 Ohio Laws Pt. II 2809, 2843-2844), the Medical Malpractice Act, sets forth the legislative purpose of such Act as follows:

"This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health and safety. The reason for such necessity lies in the fact that immediate action is necessary to insure a continuance of health care delivery to the citizens of Ohio.***"

The emergency referred to in Section 8 has been discussed generally in decision and commentary throughout the country. One such reference is found in the case of *Floyd Keeton, Jr. et al.* v. *Mansfield Obstetrics & Gynecology Associates, Inc., et al.,* Civil Action C80-1573A, U. S. District Court, Northern District of Ohio, Eastern Division, in which the court, dealing with the constitutionality of another facet of the Act, found there to be a rational basis for the classification.

Judge Contie stated in the opinion as follows:

"A medical malpractice insurance crisis, creating costly insurance rates and decreasing the availability of malpractice insurance for health care providers, has arisen in this country over the past ten to fifteen years. The result of this malpractice insurance crisis has been a plethora of legislative responses in aid of limiting or lowering the cost of malpractice insurance. The assumption underlying these legislative enactments is that the dramatic increase in malpractice insurance rates is substantially the result of a sharp increase in the number and amount of malpractice claims and awards. The legislative enactments, therefore, are aimed at alleviating the costs involved, to health care providers and malpractice insurance carriers, in medical malpractice lawsuits. Common legislative enactments that have been adopted by several states include: 1) limiting the amount recoverable against or

---

[2] See, *e.g.*, Comment and Notes, Legislative Responses to the Medical Malpractice Crisis, 39 Ohio State L. J. 855 (1978); Notes, Medical Malpractice Statute, 1977 Wis. L. Rev. 203; Comments, Recent Medical Malpractice Legislation, 50 Tul. L. Rev. 655 (1976); Comment, An Analysis of State Legislative Response to the Medical Malpractice Crisis, 1975 Duke L. J. 1417; Annotation, 80 A.L.R. 3d 583.

the liability of health care providers, or both, in malpractice suits; 2) reducing the statute of limitations applicable to medical malpractice suits; 3) abrogation of the collateral source rule; 4) establishing medico-legal screening panels; and 5) establishing arbitration plans. These legislative schemes have, in the medical malpractice area, been frequently challenged and almost universally held to be constitutional." (Footnotes omitted.)

The Ohio General Assembly, after appropriate study and debate on the subject, recognized the urgency of implementing a reasonable and effective means of helping alleviate the adverse economic and social impacts of this medical provider crisis. It is beyond reasonable question that the General Assembly had a legitimate interest in protecting the health of its citizens as well as the economic and social stability of the state in this area of concern. Concluding as they must have that the increased number of medical claims was the cause of the dramatic rise in the cost of medical malpractice insurance, and thus the cause of the rise in the cost of providing medical services to the public, it was only rational for the General Assembly to deal with such claims in the manner provided in the Act.

This court previously had occasion to address yet another facet of Am. Sub. H. B. No. 682, that being R. C. 2743.43, the section dealing with the qualification of medical experts who testify in medical malpractice cases. A majority of the court, in *Denicola* v. *Providence Hospital* (1979), 57 Ohio St. 2d 115, held such section of law not to be violative of the Equal Protection Clause of the United States Constitution, and, in so doing, found a rational basis for such section of law by stating, at page 120, in the opinion, as follows:

"Specifically, the General Assembly was legitimately concerned with the competency of medical malpractice experts testifying in medical malpractice claims, and the profound impact of such cases on the availability of medical malpractice insurance and resulting availability of health care in Ohio."

The intermediate appellate courts in this state which have addressed the constitutionality of the Medical Malpractice Act have consistently held it to be constitutional, *e.g.,* the Court of Appeals for Summit County in the instant case; the Court of

Appeals for Hamilton County in the unreported case of *Rembold* v. *Elizabeth Gamble Deaconess Nursing Home* (March 19, 1980), case No. C-790011; and the Court of Appeals for Franklin County in the case of *State, ex rel. Riverside Methodist Hospital,* v. *Gillie* (1978), 13 O.O. 3d 50, reversed on other grounds (1979), 58 Ohio St. 2d 49.

The substantial majority of state and federal courts addressing the issue of the constitutionality of similar statutes have found no infringement of constitutional equal protection rights, and have specifically found such laws to be constitutional. Some of these cases are: *Seoane* v. *Ortho Pharmaceuticals, supra,* Louisiana statute requiring review of claims of medical malpractice by a review panel prior to commencement of suit bears a rational relationship to the legitimate state interest of lowering cost of assuring the availability of medical care, regardless of whether it will in fact accomplish such aims, and thus does not result in deprivation of equal protection; *Eastin* v. *Broomfield, supra,* mandatory referral of malpractice claim to medical liability review panel not violation of equal protection; *Everett* v. *Goldman, supra,* mandatory use of medical review panel violates neither equal protection nor substantive due process; *Attorney General* v. *Johnson, supra,* mandatory use of health claims arbitration panel not violation of equal protection; *Paro* v. *Longwood Hosp.* (Mass. 1977), 369 N.E. 2d 985, mandatory screening before medical malpractice tribunal and requirement that claimant whose claim is rejected by tribunal post bond before further prosecution violate neither equal protection nor procedural nor substantive due process; *Prendergast* v. *Nelson, supra,* use of medical review panel violates neither equal protection nor due process; *Comiskey* v. *Arlen, supra,* submission of claim to medical malpractice mediation panel and admissibility of unanimous panel recommendation concerning liability at subsequent trial not violation of equal protection; *State, ex rel. Strykowski,* v. *Wilkie, supra,* a mandatory patients' compensation panel review of all medical malpractice claims violates neither equal protection nor due process; *Rudolph* v. *Iowa Methodist Medical Center* (Iowa 1980), 293 N.W. 2d 550, statute abrogating collateral source rule, at least partially in cases involving medical malpractice suits against designated providers of

health care, was not unconstitutional; *Johnson* v. *St. Vincent Hospital, supra,* panel submission requirements, recovery limitation imposed by Act, limitations on pleadings and practice in court not violations of equal protection; *Hines* v. *Elkhart General Hospital, supra,* also holding that Indiana Medical Malpractice Act medical review panel provision did not violate right to trial by jury and did not violate equal protection; and *DiAntonio* v. *Northampton-Accomack Memorial Hosp., supra,* different treatment of medical malpractice plaintiffs from other tort plaintiffs under Virginia Medical Malpractice Act not a denial of equal protection and admission of panel finding not a violation of right to a jury trial.

We are in agreement with the basic holdings of these other state and federal courts relative to statutes similar to that which is under consideration here. In that the General Assembly recognized that a crisis existed in the health care delivery field in Ohio, and because we find that the General Assembly had a legitimate interest in such subject of crisis—and, in fact, had a duty to exercise its legislative discretion—we hold that R. C. 2711.21 represents a rational response by the General Assembly to that known crisis, and, therefore, hold such section of law to be constitutional.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, STRAUSBAUGH, SWEENEY and LOCHER, JJ., concur.

C. BROWN, J., dissents.

STRAUSBAUGH, J., of the Tenth Appellate District, sitting for P. BROWN, J.

CLIFFORD F. BROWN, J., dissenting. The judgment for defendants should be reversed because the arbitration decision pursuant to R. C. 2711.21, admitted in evidence at the jury trial over objection of plaintiffs, violated Section 5, Article I of the Ohio Constitution, and Civ. R. 38(A). Use of the panel's report as evidence impermissibly delegates the jury's fact finding functions to a panel of arbitrators. Also, the statute, by setting up a separate procedure to handle medical negligence claims, violates equal protection principles.

First, R. C. 2711.21(C), which allows use of the panel's decision as evidence at trial, violates plaintiffs' right to trial by jury guaranteed by Section 5, Article I of the Ohio Constitution. The introduction of findings by an "expert" panel as evidence substantially infringes on the jury's determination of the ultimate fact in issue. Clearly, the arbitration panel was designed as a check on the jury. *Simon* v. *St. Elizabeth Medical Center* (Montgomery Co. C.P. 1976), 355 N.E. 2d 903, 908. As such, it suggests a lack of faith in the fairness of jury verdicts. *Wheeler* v. *Shoemaker* (D.C.R.I. 1978), 78 F.R.D. 218, 226-227, 228. Such a lack of faith is prohibited by our state Constitution.

Moreover, Civ. R. 38(A) provides that the right to a jury trial "shall be preserved to the parties inviolate." This civil rule was promulgated by this court pursuant to Section 5(B), Article IV of the Ohio Constitution. Under that constitutional provision, this court has been granted exclusive power to "prescribe rules governing practice and procedure in all courts of the state * * *. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." R. C. 2711.21, a statute governing practice and procedure,[3] necessarily conflicts with Civ. R. 38(A), and unlawfully usurps power assigned to this court by Section 5(B) of Article IV.[4]

The majority cites a number of cases from other jurisdictions which held there was no infringement of a right to a jury

---

[3] I find untenable the proposition that Ohio's Medical Malpractice Act is not a procedural device for resolving disputes. In the case of *Winfree* v. *May* (N.D. Ohio, January 31, 1979), No. 77-88, at page 2, United States District Court Judge Walinski, while holding the statute substantive for choice of law purposes, admits that the introduction of the arbitration panel award into evidence in a medical malpractice action would gravely influence the fact finder's decision. See, Turner, Medical Malpractice Arbitration on the Erie Railroad, 11 Univ. of Toledo L. Rev. 1 (Fall, 1979), at pages 20-21.

[4] This conclusion is suggested by footnote 4, pages 119-120 in *Denicola* v. *Providence Hospital* (1979), 57 Ohio St. 2d 115, which states:

"In holding that R. C. 2743.43 does not violate either the Equal Protection Clause or R. C. 1.48, this court in no way passes upon whether the enactment of procedural statutes, affecting areas traditionally within the province of the courts, is constitutional within the purview of Section 5 (B), Article IV of the Ohio Constitution, or whether the passage of such procedural statutes violates the Separation of Powers doctrine by unreasonably infringing upon the inherent power of the judicial branch of state government."

trial by those states' malpractice statutes. However, even admitting that "a substantial majority of state and federal courts" found no constitutional infirmity in their medical malpractice statutes, I remain unpersuaded by sheer numerosity. If justice consists of counting noses, then the function of this court could be performed by a tabulating machine. In any event, the other jurisdictions are not unanimous. These cases are distinguishable by the fact that the Ohio statute provides not for medical experts, but for a panel of laymen, with no claim to expertise in medical practice. Other differences exist to make these cases less than persuasive.[5]

The Illinois Supreme Court in *Wright* v. *Central Du Page Hospital Assn.* (1976), 63 Ill. 2d 313, 347 N.E. 2d 736, held the medical arbitration statute unconstitutional as an invasion of the right to a jury trial.[6] The Pennsylvania Supreme Court in *Mattos* v. *Thompson* (Pa. 1980), 421 A. 2d 190, held its medical malpractice Act requiring arbitration an unconstitutional infringement of the right to a jury trial because the procedure caused "oppressive delay" and "impermissibly infringes upon the constitutional right to a jury." *Id.* at 196.[7]

---

[5] For example, *Prendergast* v. *Nelson* (1977), 199 Neb. 97, 256 N.W. 2d 657, concerns a medical claims Act where the "review panel's sole function is to provide an expert opinion based on evidence submitted to it by the parties. It is not an arbitration board and has no authority to dispose of the action." *Id.* at 110.

*Comiskey* v. *Arlen* (1976), 55 App. Div. 2d 304, 390 N.Y. Supp. 122, affirmed on other grounds (1977), 43 N.Y. 2d 696, 372 N.E. 2d 34, considered the New York medical claims Act, similar to the Acts in Florida, Louisiana, Maryland and Nebraska, where the arbitration panel is constituted by at least one physician, and the panel recommendation is, in effect, an expert opinion only. Likewise, compare *Seoane* v. *Ortho Pharmaceuticals, Inc.* (D.C.E.D. La. 1979), 472 F. Supp. 468.

The right to a jury trial is fundamental to English law, and should be guarded with the utmost care. *Beacon Theatres, Inc.* v. *Westover* (1959), 359 U. S. 500; *Jacob* v. *New York* (1942), 315 U. S. 752.

[6] The Illinois Supreme Court in *Wright, supra,* held at page 322:

"Under these statutory provisions a physician and lawyer member of the medical review panel are empowered to make conclusions of law and fact 'according to the applicable substantive law'***over the dissent of the circuit judge. This, we hold, empowers the nonjudicial members of the medical review panel to exercise a judicial function in violation of sections 1 and 9 of article VI of the Constitution."

The Illinois arbitration panel findings and decision were not admissible as evidence in the later jury trial to which either party was entitled if dissatisfied with the arbitration panel decision.

[7] The Pennsylvania medical malpractice Act provided for an arbitration board

The Illinois medical arbitration statute did not encroach upon the right to a jury trial nearly as much as Ohio's Act because Illinois did not permit the arbitration decision to be admitted in evidence at the jury trial. In contrast, R. C. 2711.21(C) permits the arbitration decision to be admitted in evidence at the jury trial, thereby permitting non-expert witnesses to give their opinions on the ultimate issue, a function reserved solely for the jury. Such ultimate issue testimony, even by an expert witness, uniformly has been held inadmissible in evidence in Ohio. *Shepherd* v. *Midland Mutual Life Ins. Co.* (1949), 152 Ohio St. 6; *Cottom* v. *Klein* (1931), 123 Ohio St. 440; *Fowler* v. *Delaplain* (1909), 79 Ohio St. 279; *Dorsten* v. *Lawrence* (1969), 20 Ohio App. 2d 297; 21 Ohio Jurisprudence 2d 415, Evidence, Section 409.

The arbitration panel decision is inadmissible for two reasons: (1) as hearsay evidence, and (2) as opinion evidence on the ultimate issue for the jury. Introduction of such inadmissible evidence should be a basis for a mistrial. For a much less grave reason it is reversible error for the trial court not to declare a mistrial when counsel for plaintiff in the course of a jury trial intentionally reveals that defendant was covered by liability insurance. *Chitlik* v. *Allstate Ins. Co.* (1973), 34 Ohio App. 2d 193; *Chiesa* v. *Thomas* (1956), 103 Ohio App. 468; *Zilch* v. *Sadowski & Shawke* (1931), 10 Ohio Law Abs. 423; 52 Ohio Jurisprudence 2d 511, Trial, Section 28.

The Ohio Medical Malpractice Act, to the extent it sets up an arbitration panel procedure in R. C. 2711.21(C), also violates equal protection principles. This statutory classification, distinguishing medical claims from all other negligence claims, both affects a "fundamental" interest and is based on a

---

composed of two attorneys, two "health care providers" and three lay persons. In *Mattos* v. *Thompson, supra,* the Pennsylvania Supreme Court reversed its earlier 1978 decision in *Parker* v. *Children's Hospital of Philadelphia,* 483 Pa. 106, 394 A. 2d 932, which had upheld the constitutionality of the same Pennsylvania medical malpractice Act. In a concurring and dissenting opinion, Justice Larsen criticized the earlier *Parker* decision in this language at page 197:

"In the face of this and similar statistical evidence, Mr. Justice Nix, and the majority of the *Parker* Court were nevertheless 'satisfied' that any burden on a victim's right to jury trial was 'theoretical' and that such 'theoretical burden' was 'counterbalanced by the substantial advantages' provided by the Act. I submit that the burden on the right to a jury trial is no less theoretical, and that the 'advantages' of the Act are no greater now, than when we decided *Parker*."

"suspect" criterion. Therefore, the governmental interest must be compelling, or at least there must be a "rational" connection between a legitimate state interest and the legislative scheme. *Simon* v. *St. Elizabeth Medical Center, supra; Graley* v. *Satayatham* (Cuyahoga Co. C.P. 1976), 343 N.E. 2d 832; *Jimenez* v. *Weinberger* (1947), 417 U. S. 628, 632; *Belle Terre* v. *Boraas* (1974), 416 U. S. 1; *San Antonio Independent School Dist.* v. *Rodriguez* (1973), 411 U. S. 1. I find no such compelling interest or rational connection.