**WOOSTER COMMUNITY HOSPITAL, Appellant,**

v.

**ANDERSON, Appellee.**

[Cite as *Wooster Community Hosp. v. Anderson* (1996), 108 Ohio App.3d 290.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 95CA0030.

Decided Jan. 10, 1996.

*Steven D. Knowling,* for appellant.

*Robert C. Anderson, pro se.*

REECE, Judge.

Appellant, Wooster Community Hospital, appeals the Wayne County Municipal Court's denial of its motion to vacate. We affirm.

I

On September 20, 1994, appellant sued Robert Anderson, appellee, for unpaid medical services rendered to him and his daughter in the amount of $143.68. Anderson did not respond to the complaint, and appellant moved for a default judgment pursuant to Civ.R. 55. On February 1, 1995, the trial court granted appellant a default judgment for $143.68 plus interest.

On February 23, 1995, appellant moved to vacate a trial court order. This order, issued by the presiding judge of the trial court in 1993, articulated the court's rule that the court would not permit a garnishment of an amount greater than twelve percent of a debtor's wages when the creditor was a health care provider attempting to collect a debt incurred for providing health care services. Appellant argued that the court's order, which applied the existing rate of garnishment pursuant to R.C. 2716.021, violated appellant's right to equal protection under the law. Appellant challenged the constitutionality of the statute on the grounds that it lacked a rational basis. Appellant contended that because all other judgment creditors in Ohio could garnish up to twenty-five percent of the debtor's wages, no reason existed to prevent a judgment creditor that is a health

care provider from collecting the same amount. The trial court rejected appellant's argument and denied appellant's motion. Appellant now appeals.

## II

Appellant raises one assignment of error, asserting two arguments. It argues that Ohio's judgment creditor law violates the Equal Protection Clauses of the Ohio and United States Constitutions. Appellant contends that no rational basis exists in order to justify the discrimination that occurs between a judgment creditor that is a health care provider and all other judgment creditors. In addition, appellant also argues that the statutes violate its right to due process.

Initially, this court addresses appellant's second argument concerning due process. While appellant couches its argument in terms of due process, the argument as made by the appellant centers on whether it was denied its right to remedy under Section 16, Article I of the Ohio Constitution. Appellant contends that "[i]n many instances, the statutes at issue could work to reduce the net garnishment funds applied to the balance of the judgment to the point where each successive attachment would not cover the expense of the local Clerk of Courts filing fee for the garnishment." Significantly, appellant in its motion to the lower court never raised a constitutional challenge to the statutes other than on the grounds of equal protection. Therefore, appellant has waived its right to challenge the statute as violative of its right to remedy on appeal. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus.

By operation of R.C. 2716.051, Ohio's judgment creditor law treats judgment creditors who provide health care services or supplies differently from all other creditors. Health care judgment creditors can garnish a maximum of twelve percent of a debtor's earnings subject to garnishment. R.C. 2716.021. All others can garnish an amount up to twenty-five percent of the garnishable wage. R.C. 2716.05. The question then is whether this classification that treats judgment creditors differently violates equal protection guarantees.

In an equal protection challenge to a statute, Ohio law and federal law are in accord. *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 353, 639 N.E.2d 31, 33. Where neither a fundamental right nor a suspect class is involved, a legislative classification survives a constitutional challenge if a rational basis exists for the unequal treatment of groups. *Beatty v. Akron City Hosp.* (1981), 67 Ohio St.2d 483, 492, 21 O.O.3d 302, 307, 424 N.E.2d 586, 592. This class distinction must bear some rational relationship to a legitimate government interest. *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 92, 561 N.E.2d 909, 910. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*

(1961), 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399. Thus, a discriminatory statute is not automatically unconstitutional. See *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 446–447, 613 N.E.2d 574, 576–577.

Appellant relies upon the Ohio Fifth District Court of Appeals decision of *Community Physical Therapy v. Wayt* (1994), 93 Ohio App.3d 612, 639 N.E.2d 515, to support its argument. In *Wayt,* the court held the garnishment statute unconstitutional as violative of the Equal Protection Clauses of the Ohio and Federal Constitutions. The court examined the related legislation that the Ohio General Assembly passed as part of the same bill that included these specific garnishment provisions. That bill, 1992 Am.Sub.H.B. No. 478, related to health care plan regulations, limits on administrative expenses, refunds for billing errors, use of standard forms, student loans, and so forth. After examining these statutes, the court of appeals determined:

"After a cursory review of other amended statutes, we find that these statutes do reflect a governmental interest, *i.e.,* regulation of the insurance industry, aid to students, etc. There is no overwhelming governmental interest in the garnishment laws of Ohio except that they must afford due process to the debtor.

"Accordingly, we find no governmental interest in the singling out of a class of creditors and subjecting the class to a lower percentage that the class may attach. We find that R.C. 2716.021 and 2716.051 violate the Equal Protection Clauses of the United States and Ohio Constitutions and are therefore unconstitutional." *Id.* at 615, 639 N.E.2d at 517.

Concerning appellant's equal protection argument, this court does not agree with the decision of the Fifth District Court of Appeals. We begin with the proposition that the state of Ohio has a legitimate government interest in protecting the health and welfare of its citizens. This legitimate interest is one not only of legislative prerogative, but also one of constitutional doctrine. See, generally, *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico* (1986), 478 U.S. 328, 341–342, 106 S.Ct. 2968, 2976–2977, 92 L.Ed.2d 266, 280–281; *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 274–275, 28 OBR 346, 349–350, 503 N.E.2d 717, 720–721. This legitimate government interest serves as the justification, in part, for such comprehensive regulation in this state as environmental law, food service regulation, and occupational health and safety regulation. Likewise, the state's legitimate interest in the health of its citizens serves as a justification for the statute at issue because the statute deals with regulation of the health care industry. More specifically, the legitimate interest at work in the statute focuses on the recipients of health care services. Appellant contends that the statute unfairly discriminates against it because it cannot garnish twenty-five percent like other judgment creditors. If this court were to limit its inquiry to

the face of the statute, appellant's argument might possess merit. See *Wayt.* However, the focus of the statute properly falls not upon appellant but upon the recipients of appellant's services.

Generally, there are three classes of people who receive health care. First, there are those who possess the means, such as insurance, to pay for the services. Second, there are those who qualify for public assistance that pays for the health care. Finally, there are those who have limited financial resources but who do not qualify for public assistance. It is this last class that the statute protects. This third class of people may encounter difficulty in obtaining health care because their limited resources do not enable them to purchase necessary health insurance or to fully pay for the needed services solely from their limited income. By limiting the amount of garnishment a health care judgment creditor can collect, the statute protects this third class in several ways and thus bears a rational relationship to the government's interest.

First, it tries to avoid the sometimes pernicious consequences of attempting to collect an inordinate sum from those who are seriously ill. Obviously, serious illness imposes physical, psychological and financial burdens on the patient and patient's family. These burdens may be increased as the patient and family struggle to pay for the necessary health care. The statutes may ease the financial burdens because they reduce the amount of garnishment. By limiting the amount of garnishment to twelve percent, the statutes spread the cost of the health care over a longer period of time. Consequently, the statutes may provide a patient with limited income the ability to actually pay back his debt without suffering financial ruin. By reducing the amount of garnishment in this manner, the statutes can allow a person of limited financial means to allocate his or her limited resources for other necessities while at the same time paying off the debt.

Second, the statute can encourage people of this third class to seek out medical care. A person with limited income may not seek out medical treatment if he or she knows that his or her wage possibly is subject to a twenty-five percent garnishment. The limit imposed by the statute rationally relates to the state's interest in the health of its citizens because the garnishment limit encourages persons to seek out treatment without fearing that a quarter of his or her limited wage is subject to garnishment.

Finally, the statutes protect those members of this class who face only two options, treatment or death, because of their illness. The burdens of this Hobson's choice may be alleviated by knowing that the health care provider's ability to garnish the wages of the patient are reduced. In other words, health care treatment sometimes is a necessity of life. Therefore, the legislature has the prerogative of abating the financial cost of this necessity over a longer period of time.

In conclusion, this court recognizes that health care costs money and that recipients of appellant's services should not be relieved of their obligation to pay. Clearly the statute does not abrogate the recipient's responsibility, because appellant can collect the debt owed to it. That appellant may have to wait longer than other judgment creditors to collect its debt does not preclude the statutes from passing constitutional muster. In sum, the rational basis scrutiny this court applies today is the "most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause." *Dallas v. Stanglin* (1989), 490 U.S. 19, 26, 109 S.Ct. 1591, 1596, 104 L.Ed.2d 18, 26. R.C. 2716.021 and 2716.051 survive constitutional challenge under this scrutiny. The statutes rationally relate to the state's interest in protecting the health of its citizens by easing their financial burdens and encouraging them to seek out medical treatment. Accordingly, the trial court properly overruled the appellant's motion to vacate.

## III

Appellant's assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment accordingly.*

QUILLIN, P.J., concurs.

SLABY, J., dissents.

SLABY, Judge, dissenting.

I would reverse because I believe that the statutes are unconstitutional.

I agree with the majority that the state has a legitimate interest in protecting the health and safety of all its citizens. I also agree that we initially presume the constitutionality of a statute. I do not agree, however, that singling out one group of judgment creditors and delaying its collection process protects the health and safety of our citizens. Nor am I persuaded that the state has any greater interest in regulating debt collection for medical services than for any other professional service. No rational basis has been offered for this distinction. Therefore, I do not believe that the statutes are constitutional.

I am not convinced that a person in need of medical services seeks them out because the provider can collect at a rate of only twelve percent rather than twenty-five percent. I have seen no evidence to indicate that people with financial difficulties were being denied medical services. On the other hand, I am convinced that the statutes' discrimination against medical providers will have the opposite effect from that desired. Limiting and delaying the collection of the debt increase the cost of providing the services. The higher the initial cost of the

services, the greater the chilling effect on seeking those services. The greater the limitation on the collection for the services rendered, the greater the risk that a provider will selectively offer those services. The statutes set the stage for financial screening before services will be performed. This is exactly what it seems the legislators wanted to prevent.

Accordingly, I dissent.