OPINION
{¶ 1} Appellant Jeffrey Wells, the Guardian of Elizabeth Wells, a minor, appeals a judgment of the Court of Common Pleas of Fairfield County, Ohio, which affirmed the decision of appellee Ohio Department of Job and Family Services. JFS determined Elizabeth Wells is ineligible to participate in Ohio's Home Care Waiver Medicaid Program. Appellant assigns six errors to the trial court:
 {¶ 2} "I. THE LOWER COURT ERRED, AS A MATTER OF LAW, BY MISINTERPRETING AND MISAPPLYING THE ELIGIBILITY CRITERIA FOR THE OHIO HOME CARE WAIVER PROGRAM.
 {¶ 3} "II. THE LOWER COURT COMMITTED AN ABUSE OF DISCRETION BY FINDING THAT WELLS' PHYSICIAN DETERMINED SHE MEETS THE CRITERIA FOR AN ICF/MR LEVEL OF CARE.
 {¶ 4} "III. THE LOWER COURT ERRED BY MISINTERPRETING AND MISAPPLYING THE ELIGIBILITY CRITERIA FOR AN ICF/MR LEVEL OF CARE, WHICH REQUIRES THAT AN INDIVIDUAL MEET ALL OF THE CRITERIA SET FORTH IN OHIO ADMIN. CODE SECTION 5101:3-3-07(C).
 {¶ 5} "IV. THE LOWER COURT ERRED BY MISINTERPRETING AND MISAPPLYING OHIO ADMIN. CODE SECTION 5101:3-3-07(C)(6), WHEN IT DETERMINED THAT WELLS WOULD BENEFIT FROM MR/DD SERVICES.
 {¶ 6} "V. THE LOWER COURT ERRED BY DETERMINING THAT WELLS IS A MENTALLY RETARDED INDIVIDUAL.
 {¶ 7} "VI. THE LOWER COURT ERRED BY MISINTERPRETING AND MISAPPLYING R.C.119.12 AND RELEVANT CONSTITUTIONAL CASE LAW WHEN IT DETERMINED THE DECISION OF THE ODJFS WAS "OTHERWISE IN ACCORDANCE WITH THE LAW."'
 {¶ 8} The record indicates Elizabeth Wells suffered a number of injuries at birth, which has resulted in life long disabilities including spastic cerebral palsy, quadriplegia, gastritis, and scoliosis. She is confined to a wheel chair. She has severe weakness in her arm and leg muscles, which restricts her ability to control her movements and posture. Elizabeth wears a rigid plastic brace to correct a curvature of her spine. She cannot walk or transfer herself from her bed to her wheelchair, and she cannot propel her wheelchair. Her caretakers must reposition her often so her skin does not develop sores or ulcers, and she cannot control her bodily functions. Even with special equipment, Elizabeth's ability to communicate is severely limited.
 {¶ 9} Elizabeth has many problems with her digestive system, and she cannot take food by mouth. Food and some medications are given through a gastro-intestinal tube implanted into her stomach. Elizabeth also has a pump implanted into her abdomen to administer medication directly to her spinal cord.
 {¶ 10} Elizabeth's parents and grandparents have cared for her since birth, but because of her grandfather's death and her grandmother's increasing age, appellant sought assistance from JFS to insure Elizabeth can continue to reside in her family's home.
 The Ohio Home Care Waiver Program {¶ 11} Title XIX of the Social Security Act established the Medicaid Program, by which a state may receive federal funding to provide medical assistance to individuals whose resources are insufficient to meet the cost of their care. Ohio participates in the Medicaid Program, which is administered by JFS.
 {¶ 12} Among its many benefits, Medicaid provides funding to care for persons in nursing homes and other facilities. Some persons who are not eligible for Medicaid while in their homes become eligible if they are placed in one of these facilities. The Waiver Programs permit the states to waive certain eligibility requirements for these persons so they can receive services in their homes and avoid or postpone institutionalization.
 {¶ 13} In order to receive federal funds, the state must comply with certain federal regulations. One of the federal regulations which impacts Elizabeth's case is that a waiver program must serve a discreet group of persons, and may not include more than one "target group". In the past, Ohio's waiver program grouped all persons who need intermediate care together, but in 2001 the O.A.C. was revised to create a separate classification for persons who are mentally retarded or have a chronic disability closely related to mental retardation which results in impairment of general intellectual functioning, or adaptive behavior similar to persons with mental retardation, and requiring treatment or services similar to those required for persons with mental retardation, see O.A.C. 5101:3-3-05. Because of the change, Ohio's Home Care Waiver Program now recognizes four possible levels of care: (1) Protective; (2) ICF-MR/DD [Intermediate Care Facility-Mentally Retarded/Developmentally Disabled]; (3) Intermediate; and (4) Skilled. Eligibility for the different waiver programs are based in part on the level of care the applicant needs.
 {¶ 14} Individuals who are not classified MR/DD are eligible for the Home Care Waiver Program if they require services at either the intermediate or skilled level of care. However, individuals classified with mental retardation or a developmental disability are not eligible for the Home Waiver Program unless they require skilled care.
 {¶ 15} In order to be classified as requiring skilled care, an individual classified MR/DD must either receive one skilled nursing service seven days per week and/or a skilled rehabilitation service at least five days per week; or receive a skilled service ordered by a physician and delivered by a licensed or certified professional. The person must require the skilled service either because of the instability of the individual's condition and the complexity of the prescribed services or because of the instability of the individual's condition and the presence of the special medical complications.
 {¶ 16} Appellant applied for the Home Care Waiver Program in July of 2003, and the CareStar Agency, under a contract with JFS, evaluated Elizabeth. JFS denied the application in September of 2003, because it found Elizabeth did not require a skilled level of care, and classified her ICF-MR/DD, ineligible for the home care waiver program.
 {¶ 17} Appellant appealed the matter and a hearing officer from JFS' Bureau of State Hearings conducted a hearing on the appeal. In March of 2004, appellant's appeal was overruled. In April of 2004, JFS' Administrative Appeal Division affirmed the hearing officer's decision. Appellant filed a notice of appeal in the Court of Common Pleas, which affirmed JFS' decision. The appeal then proceeded to this court.
 Standard of Review {¶ 18} The trial court's August 11, 2005 judgment correctly stated its standard of review. Pursuant to R.C.119.12, a trial court must affirm an agency's order if it is supported by reliable, probative, and substantial evidence, and is in accord with law, see, e.g., Pons v. Ohio State Medical Board (1993),66 Ohio St. 3d 619. Our standard of review is even more limited: appellate courts are to determine only if the trial court has abused its discretion, Hartzog v. Ohio State Univ. (1985),27 Ohio App.3d 214, 216, 500 N.E.2d 362. The term `abuse of discretion' implies the trial court's attitude is unreasonable, arbitrary or unconscionable,' Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Both common pleas and appellate courts review questions of law de novo, Univ. Hosp.,Univ. of Cincinnati College of Medicine v. State Emp. RelationsBd. (1992), 63 Ohio St.3d 339, 334.
 V. {¶ 19} In his fifth assignment of error, appellant urges the court erred by determining Elizabeth Wells is a mentally retarded individual. A review of the trial court's judgment entry demonstrates the trial court did not find Elizabeth Wells is a mentally retarded person. The trial court found Elizabeth falls within the ICF-MR/DD level of care.
 {¶ 20} In order to reverse the trial court's decision, we must find it abused its discretion when it found JFS' decision is supported by reliable, probative, and substantial evidence. Contrary to appellant's assertion, the record contains evidence Elizabeth Wells' doctor stating she has been diagnosed as mentally retarded.
 {¶ 21} The regional supervisor from CareStar testified an official diagnosis of mental retardation is made based upon an IQ test score, while developmental delay means an individual has not achieved developmental milestones expected for the individual's age. CareStar was unaware Elizabeth had been diagnosed as mentally retarded, and instead focused on whether she is developmentally disabled.
 {¶ 22} The Data Collection Checklist CareStar completed has inconsistent information, identifying Elizabeth as not having a disability closely related to mental retardation on one page, but on the next page stating she does. CareStar's regional supervisor testified the portion which indicated Elizabeth does not have a disability closely related to mental retardation is incorrect.
 {¶ 23} We find the record contains evidence both of retardation and developmental disability. The trial court found there was reliable probative and substantial evidence to support JFS' decision, and this court cannot find the trial court abused its discretion.
 {¶ 24} The fifth assignment of error is overruled.
 I. {¶ 25} In his first assignment of error, appellant urges the trial court erred as a matter of law in interpreting the eligibility criteria for the Ohio Home Care Waiver Program. Appellant asserts Elizabeth satisfies all the criteria for the intermediate level of care because of her physical limitations, not any mental impairment. Therefore, appellant argues, Elizabeth should have been classified as intermediate care rather than ICF-MR/DD.
 {¶ 26} Appellant is incorrect. In order to be classified as intermediate care, the individual cannot be mentally retarded or developmentally disabled, O.A.C. 5105:3-3-06. Elizabeth does not satisfy all the criteria for the intermediate level of care.
 {¶ 27} The first assignment of error is overruled.
 II. {¶ 28} In his second assignment of error, appellant argues the court abused its discretion when it found Elizabeth's physician determined she meets the criteria for an ICF-MR/DD level of care. Appellant argues the form Elizabeth Wells' physician signed was misleading, and the doctor did not intend to identify her as MR/DD.
 {¶ 29} The record contradicts appellant's argument. In addition to the form the doctor originally completed, the record also contains a letter from Elizabeth's doctor reaffirming his opinion she is mentally retarded/developmentally disabled.
 {¶ 30} The trial court did not abuse its discretion when it found there is reliable, probative, and substantial evidence supporting the determination Elizabeth meets the criteria for ICF-MR/DD.
 {¶ 31} The second assignment of error is overruled.
 III. IV. {¶ 32} In appellant's third and fourth assignments of error, appellant urges the trial court misinterpreted and misapplied the eligibility criteria. In order to be classified ICF-MR/DD, the agency must determine the individual would benefit from services and supports designed and coordinated specifically to promote the individual's acquisition of skills and to decrease or prevent regression in the performance of tasks related to the major life areas.
 {¶ 33} Appellant argues there is insufficient evidence in the record to demonstrate Elizabeth would benefit from any services. Appellant urges JFS and/or its employee CareStar generated all the evidence presented, and no disinterested party evaluated Elizabeth.
 {¶ 34} In addition to the Data Collection Checklist and other evidence JFS and CareStar generated, the record also contains information from Elizabeth Wells' school detailing the specialized services she receives pursuant to her Individualized Education Plan.
 {¶ 35} We find the trial court properly interpreted and applied the eligibility criteria, and did not abuse its discretion.
 {¶ 36} The third and fourth assignments of error are overruled.
 VI. {¶ 37} In his sixth assignment of error, appellant challenges the constitutionality of the Ohio Home Waiver Program. Appellant raised this issue in the administrative proceedings and also before the court of common pleas. The trial court discussed appellant's constitutional claims extensively and found no violation of due process or equal protection.
 {¶ 38} The program separates persons who need intermediate care into two groups, those who are mentally retarded and those who are not. Appellant concedes this may be permissible and even beneficial, but here it results in disparate treatment. If Elizabeth were classified as needing intermediate care and allowed to participate in the Home Care Waiver Program, she could immediately receive benefits, but because she has been classified in the MR/DD category, there may be a waiting list for services.
 {¶ 39} The trial court correctly found equal protection guarantees do not invalidate all legislation that creates classifications, but requires grounds justifying disparate treatment within and outside of a designated class, see Beattyv. Akron City Hospital (1981), 67 Ohio St. 2d 483. If a statute or ordinance facially establishes classifications but there is no suspect class or fundamental right involved, unequal treatment of classes or persons may be upheld where a rational basis exists to support the inequity, City of Cleburne, Texas v. Cleburne LivingCenter (1985), 473 U.S. 432. The trial court found the statutory framework for the various programs is rationally related to legitimate state interests and is supported by reasonable grounds. We agree.
 {¶ 40} Because the state may treat the different classifications in different ways, appellant's argument concerning funding of the different programs is not well taken.
 {¶ 41} Appellant also argues Elizabeth Wells' due process rights were violated. First, appellant argues JFS' original notice of denial was deficient. The notice referenced O.A.C. Section 07222 as authority for the denial, but there is no such section in the Ohio Administrative Code. The agency presented an appeal summary at the administrative appeal hearing, citing the proper Code sections.
 {¶ 42} At the beginning of the hearing, appellant objected to the notice and the appeal summary, and Richard Collins, the hearing officer, offered to re-schedule the hearing so counsel could prepare. Counsel responded he would like the opportunity to submit additional evidence, but felt he could go forward with the hearing. The transcript shows counsel very ably prosecuted the appeal and was not taken by surprise by the defective notice.
 {¶ 43} Appellant also argues the hearing officer did not rule on the motion to strike the appeal summary. The record does not contain a motion to strike.
 {¶ 44} Appellant also argues the hearing officer was biased, because he works for JFS' Administrative Appeals Division. O.A.C. 5101: 6-602 provides state hearings must be conducted by an impartial hearing officer who has no personal stake or involvement in the case and was not directly involved in the initial determination being appealed. The hearing officer must be under the direction and supervision of the Bureau of State Hearings. Appellant does not cite to any place in the record showing the hearing officer was biased, and this court found no indication of bias in the record.
 {¶ 45} The trial court correctly found no violation of Elizabeth's due process rights. The sixth assignment of error is overruled.
 {¶ 46} For the foregoing reasons, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.
Gwin, P.J., Farmer, J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed. Costs to appellant.