JOURNAL ENTRY and OPINION
{¶ 1} Charles Daniel negligently drove his vehicle into plaintiff John Campo while Campo had been riding his motorcycle. Campo suffered injuries that exceeded the limits of Daniel's insurance. Campo sought to recoup benefits under three polices he owned that had been issued by defendant Allstate Insurance Company: a motorcycle policy, an automobile policy and a homeowner's policy. Campo's wife, plaintiff Lois Campo, sought benefits for loss of consortium. Allstate settled under the motorcycle policy, but denied claims under the other policies. Campo (we shall refer to them collectively as "Campo" unless otherwise noted) brought this declaratory judgment action against Allstate Insurance Company seeking a declaration of coverage among the separate policies. The court denied coverage at all events, and this appeal followed. The facts are undisputed so we proceed to a resolution of the issues as a matter of law. See Feldkamp v. USAA Ins. Co. (2000), 139 Ohio App.3d 118,123. The parties agree that pursuant to Ross v. Farmers Ins. Group ofCompanies (1998), 82 Ohio St.3d 281, the applicable statutory law is that in effect at the time the policy had been issued in October 1996.
 I {¶ 2} Lois Campo made a claim for the "each person" limit under the uninsured motorist coverage limits of the motorcycle policy. She makes several arguments as to why the court's decision to deny coverage under the motorcycle policy was incorrect.
 A {¶ 3} She first claims that the limits of liability provision of the motorcycle policy is void and unenforceable because it limits underinsured motorist coverage to an insured who suffers "bodily injury, sickness or disease" in violation of R.C. 3937.18. She maintains that the court erroneously believed that the limits of liability provision of the motorcycle policy was a valid and enforceable limitation on the underinsured motorist coverage applicable to her loss of consortium claim.
 {¶ 4} The version of R.C. 3937.18(H) in effect at the time the parties entered into the contract of insurance provided:
 {¶ 5} "Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."
 {¶ 6} In Clark v. Scarpelli (2001), 91 Ohio St.3d 271, the Supreme Court held that a similar version of R.C. 3937.18(H) permitted automobile liability insurers to consolidate all individual wrongful death claims arising out of any one person's bodily injury into a single claim and thus limit all wrongful death damages to a single per-person policy limit. This consolidation was permitted as long as it affirmatively appeared in the policy by way of clear and unambiguous language. Id. at 282.
 {¶ 7} Although Clark referenced wrongful death claims as being subject to R.C. 3937.18(H) consolidation, other courts have held that consortium claims of the kind involved in this case are likewise amenable to consolidation. See, e.g., Carmon v. Nationwide Mut. Ins. Co. (2001),144 Ohio App.3d 686; Eby v. Progressive Ins. Co. (Dec. 24, 2001), Preble App. No. CA2001-04-006; Lippert v. Peace (Mar. 27, 2001), Hancock App. No. 5-2000-41. We see no compelling reasons demonstrating that these courts were wrong in holding that consortium claims could be consolidated within a single limit of liability.
 {¶ 8} Allstate clearly intended to consolidate all claims, including a consortium claim, into a single limit of liability. The policy says:
 {¶ 9} "1. `each person' is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as a result of the bodily injury."
 {¶ 10} The term "bodily injury" is defined in the motorcycle policy as "bodily injury, sickness, disease or death." On its face, Lois Campo's consortium claim would not qualify as a compensable claim under the motorcycle policy because it does not involve "bodily injury, sickness, or disease."
 B {¶ 11} Campo argues that the Allstate limit on liability is unenforceable under the Supreme Court's decision in Moore v. State AutoMut. Ins. Co. (2000), 88 Ohio St.3d 27. Moore dealt with the application of R.C. 3937.18(A), which requires insurance companies to offer uninsured and underinsured motorist coverage.
 {¶ 12} Moore's application to this case can only be understood by reference to Sexton v. State Farm Mut. Auto. Ins. Co. (1982),69 Ohio St.2d 431. In Sexton, the Supreme Court allowed an insured father to recover benefits related to his daughter's death under the uninsured motorist coverage of his automobile policy. Sexton's policy did not list his daughter as a covered person, nor did she live with Sexton. The Supreme Court said that R.C. 3937.18(A) did not specifically indicate who must suffer "bodily injury." Construing the statute liberally, the court allowed the father to recover for his pecuniary loss in paying for his daughter's funeral expenses. Id. at 432.
 {¶ 13} In response to this decision, the General Assembly amended R.C. 3937.18 to permit a policy exclusion limiting coverage only to "bodily injury" suffered by the insured. Nevertheless, Moore held that this language was "ambiguous regarding whether an insurer may limit uninsured motorist coverage to accidents in which the insured sustains bodily injury." Moore, 88 Ohio St.3d at 31. Because of this "ambiguity," the Supreme Court went on to consider the legislative intent behind the amendment to R.C. 3937.18(A)(1) and found that the General Assembly did not intend to supersede Sexton because, among other reasons, the statute did not include specific language to that effect.
 {¶ 14} While Moore remains the law, its impact on this case is not what Campo hopes it is. The question for us is whether the liability limit of R.C. 3937.18(H) is enforceable. Moore did not deal with that code section — it addressed R.C. 3937.18(A)(1). In fact, the Supreme Court has recognized that claims can be consolidated under R.C.3937.18(H) for purposes of limiting liability as is done by the Allstate policy.
 {¶ 15} In Wallace v. Balint, 94 Ohio St.3d 182, 2002-Ohio-480, the court addressed the issue head-on. Noting the issue as whether a husband and wife were "separately entitled to coverage up to the per-person limit of one of their underinsured motorist policies or whether together they are limited to a single claim at the per-person limit," the Supreme Court addressed the application of Moore and rejected it as controlling. Noting that Moore dealt with the application of R.C.3937.18(A)(1), the Supreme Court reiterated that the issue was not denial of coverage, but the application of policy limits — in other words, not who could recover under the policy, but how much could be recovered. The Supreme Court went on to hold that the limits of liability were authorized by R.C. 3937.18(H) and that the State Farm policy "contained a valid limitation as authorized by R.C. 3937.18(H). Therefore, James and Wanda Wallace are together confined to one claim at the per-person limit of a single policy." Id. at 188-189.
 {¶ 16} Wallace is controlling and we therefore find that the Allstate limitation of liability provision in the motorcycle policy does not violate R.C. 3937.18(H).
 C {¶ 17} Campo argues that regardless if R.C. 3937.18(H) is valid, the language used in the Allstate policy is ambiguous and unclear. He claims that the Allstate motorcycle policy failed "to specifically exclude loss of consortium damages from the definition of the term `bodily injury,'" and as a result, consortium damages cannot be considered to be within the meaning of "bodily injury" and therefore must be considered compensable under the policy.
 {¶ 18} Language usage in this country has a way of co-opting the meaning of words. One need look no further than the word "bad," which in some circles is used to denote something "good." So when parties enter into a contract (an agreed upon set of terms that will define a course of conduct between them), it is important that the meaning of the words used in the contract are precise and specific. And because it is the parties that have chosen the meaning of the terms set forth in a contract, it is imperative that those meanings be enforced according to their expressed desires. When the policy defines "bodily injury" as "bodily injury, sickness, disease including death," the meaning is just what the definition states, no more or less.
 {¶ 19} At the risk of putting too fine a point on the argument, consider the following extrapolation from Campo's argument. Suppose a park limited its use to "animals." The term "animals" was defined as "dogs and cats." Admittedly, the definition of "animals" used in this hypothetical does not say anything about alligators. Could it be seriously argued that pet alligators should be permitted in the park because they were not mentioned in the definition of "animals?"
 {¶ 20} A consortium claim like that filed by Lois Campo does not involve any kind of bodily injury of the kind defined in the policy. A loss of consortium claim is "accurately described as `arising out of bodily injury'" to the named insured. See Carruth v. Erie Ins. Group (Sept. 21, 2000), Cuyahoga App. No. 77161. Moreover, there is no way the definition of the term "bodily injury" can be finessed to include a loss of consortium claim. Because Lois Campo demonstrated no bodily injury as that term is defined in the policy, the court did not err by granting summary judgment.
 D {¶ 21} Campo next argues that the "each person" language of the policy is ambiguous because it does not state that the "each person" limit is the maximum it will pay for "all" damages. According to Campo, the policy omits the word "all" in stating "for damages arising out of bodily injury to one person * * *." He claims that the omission of the word "all" leads to an ambiguity that exists because of the policy's failure to specifically exclude consortium damages from the definition of "bodily injury."
 {¶ 22} We might be blithe in rejecting this argument were it not for the Supreme Court's past history of agreeing with marginal positions in the law of uninsured motorist coverage. One federal court has characterized Ohio law relating to uninsured/underinsured motorist coverage as a "mess," Lawler v. Fireman's Fund Ins. Co. (Aug. 27, 2001), Northern District of Ohio, Eastern Division Case No. 1:01-CV-503, unreported at 1. Other rulings have been called "anomalies." See SeacoIns. Co. v. Davis-Irish (C.A.1, 2002), 300 F.3d 84 (referring toScott-Pontzer v. Liberty Mutual Fire Ins. Co. (1999), 85 Ohio St.3d 660). We therefore hesitate to reject this argument out of hand.
 {¶ 23} But the argument must be rejected. The use of the word "damages" without any other limiting language simply incorporates the idea that all damages are included in the limit on liability. In other words, the term "damages" is all-encompassing without limitation. Campo's suggested ambiguity is a suggestion based on sophistry.
 {¶ 24} The same holds true for Campo's argument relating to the term "each person." Campo maintains that the ordinary meaning of the word "each" is "one," and that the limitation on liability means more than one person since "under the provisions therein, `each person' underinsured motorist coverage limits does [sic] not apply to just one person but rather combines the `legally separate and independent' damages sustained by more than one person to said `each person' coverage limits." See Appellant's Brief at 20.
 {¶ 25} What Campo fails to mention is that the term "each person" is used to define the maximum amount that will be paid, not as a numerical representation of how many persons can collect. This point is proven by policy language which Campo avoids citing: the "each person" maximum that will be paid includes "damages sustained by anyone else as a result of that bodily injury." It would be absurd for us to read the policy as suggested by Campo because it would require us to disregard the "anyone else" language contained in the same sentence.
 E {¶ 26} Finally, Campo maintains that any limitation on liability in the motorcycle policy is void as it violates the Ohio Constitution's equal protection and privileges and immunities clauses. Although he purports to make arguments under separate constitutional provisions, Campo does not make any argument concerning the privileges and immunities clause of the Ohio Constitution, so we disregard any claim thereto. See App.R. 12(A)(2). The gravamen of the equal protection argument is that Lois Campo's consortium claim is treated differently than it would be had she suffered a physical injury of the kind allowed under the motorcycle policy.
 {¶ 27} Contrary to some appellate court holdings, the Ohio Supreme Court has not ruled specifically on this issue. In Beagle v. Walden
(1997), 78 Ohio St.3d 59, a four-member majority ruled that R.C. 3937.18
did not violate the one subject rule for legislative enactments. The lead opinion did address an equal protection argument, but a majority of the Supreme Court did not sign off on that view. Consequently, we do not share the view of Dermer v. Wayne (Apr. 4, 2000), Fairfield App. No. 99CA00064, that the Supreme Court "* * * has found, in Beagle v. Walden
(1997), 78 Ohio St.3d 59, 63-63 (sic), 676 N.E.2d 506, that Ohio Revised Code section 3937.18, as amended in October of 1994, is not unconstitutional."
 {¶ 28} Nevertheless, we see no possible basis for a claim that R.C. 3937.18 unconstitutionally violates equal protection. As the chief justice stated in Beagle:
 {¶ 29} "The standard for determining violations of equal protection is essentially the same under the state and federal law. Beattyv. Akron City Hosp. (1981), 67 Ohio St.2d 483, 491, 21 Ohio Op.3d 302, 307, 424 N.E.2d 586, 591-592. The preliminary step in analyzing an equal protection challenge involves scrutiny of classifications created by the legislation. `Where there is no classification, there is no discrimination which would offend the Equal Protection Clauses of either the United States or Ohio Constitutions.' Conley v. Shearer (1992),64 Ohio St.3d 284, 290, 595 N.E.2d 862, 868. Moreover, `only when it is shown that the legislation has a substantial disparate impact on classes defined in a different fashion may analysis continue on the impact of those classes.' Califano v. Boles (1979), 443 U.S. 282, 294,99 S.Ct. 2767, 2774, 61 L.Ed.2d 541, 551.
 {¶ 30} "`Whenever the law operates alike on all persons and property, similarly situated, equal protection cannot be said to be denied.' Union Sav. Assn. v. Home Owners Aid, Inc. (1970),23 Ohio St.2d 60, 63, 52 Ohio Op.2d 329, 330, 262 N.E.2d 558, 560, quoting Walston v. Nevin (1888), 128 U.S. 578, 582, 9 S.Ct. 192, 193,32 L.Ed. 544, 546. Insureds carrying identical policy limits are treated the same under R.C. 3937.18(A)(2). The only classifications of insureds treated differently under R.C. 3937.18(A)(2) are those who, by contract, have chosen different policy limits.
 {¶ 31} "Insureds purchase their levels of protection. If an insured purchases uninsured/underinsured motorist coverage in the amount of $100,000 per accident and $300,000 per occurrence, the insured is guaranteed total recovery for an accident up to those policy limits, regardless of the tortfeasor's insurance status. If the insured purchases higher or lower policy limits, those limits will dictate the total recovery available stemming from an accident with an uninsured or underinsured tortfeasor." (Internal quotations omitted.)
 {¶ 32} We are aware that only two other members of the court expressly agreed with this point of view, yet we believe the chief justice's analysis to be cogent enough that it would now command a majority of the court were the issue to be raised anew. We agree with the chief justice that matters of automobile insurance are matters of private contract that do not involve the state in a manner that would invoke equal protection. The statute may require that uninsured motorist coverage be offered, but there is nothing that requires a party to accept it. This freedom of contract does not involve state action in a way that would raise the specter of equal protection.
 {¶ 33} Moreover, there is nothing in R.C. 3937.18 that would suggest the type of unequal treatment that is the hallmark of an equal protection claim. In Ohio Farmers Ins. Co. v. Perry (Aug. 8, 1997), Ashtabula App. No. 96-A-0065, the court of appeals stated:
 {¶ 34} "In our view, the trial court properly recognized a basic contract principle, e.g., the rights of parties to freely and voluntarily enter into contracts and, moreover, to be subjected to the accompanying conditions. The insureds here agreed to be subjected to the exclusionary clause. The contractual provision excludes coverage for any insured under similar circumstances. We discern no disparate treatment of a suspect class in the case sub judice."
 {¶ 35} Campo also urges us to revisit the Beagle holding relating to the one subject rule of Article II, Section 15 of the Ohio Constitution, citing State ex rel. Ohio Academy of Trial Lawyers v.Sheward (1999), 86 Ohio St.3d 451, as grounds for reversing Beagle.
 {¶ 36} We are in no position to overrule a decision by a higher court. And in any event, we note that Sheward firmly upheld that principle that only legislative enactments with a "disunity in subject matter" will be found to have violated the one-subject rule. Sheward,86 Ohio St.3d at 496, citing State ex rel. Dix v. Celeste (1984),11 Ohio St.3d 141, 146. Campo might not like R.C. 3937.18, but he submits no compelling reasons for us to find that limitations on damages in uninsured or underinsured motorist coverage shows a disunity of purpose with the rest of the statute. Any fair reading of the statute would show the opposite — the overall purpose of the statute is to legislate matters relating to uninsured or underinsured motorist coverage. The limitation on damages provision is so clearly related to that subject that we feel no further discussion on that point is necessary.
 II {¶ 37} Campo next argues that the court erred by granting summary judgment to Allstate on the underinsured motorist claim filed under the automobile policy. Although the court did not state any basis for the summary judgment, Campo insists that the court granted summary judgment on the basis that the "other insurance" provision of the automobile policy constitutes a valid and enforceable antistacking provision that prohibits Campo from being entitled to stack the underinsured motorist coverage under the automobile policy on top of the underinsured motorist coverage under the motorcycle policy. Campo urges us to find the anti-stacking provision of the policy to be ambiguous.
 {¶ 38} Campo acknowledges that at the time the parties entered into the automobile policy, R.C. 3937.18(G) permitted Allstate to include an anti-stacking provision in the policy. Moreover, R.C.3937.18(A)(2) provided that:
 {¶ 39} "(2) * * * Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."
 {¶ 40} The Allstate automobile policy says that "if more than one policy applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit for uninsured motorist coverage * * *." The policy also says that the limit on maximum benefits payable applies "no matter how many motor vehicles or insurance policies may be involved whether written by Allstate or another company."
 {¶ 41} As noted by Allstate, there were two primary polices: the motorcycle policy issued to Campo and Daniels' automobile policy. Campo's motorcycle policy had the higher limits of liability, so pursuant to the motorcycle policy, the total benefits payable to any one person could not exceed the maximum benefits payable under the motorcycle policy.
 {¶ 42} Campo maintains that the phrase "if more than one policy applies to the accident on a primary basis" is not defined and is inherently ambiguous because it does not indicate under what circumstances more than one policy would apply to the accident on a primary basis. He believes the phrase can reasonably be construed to refer solely to a policy on the vehicle involved in the accident which is listed on the declarations page of the policy — hence, as to John Campo only the motorcycle policy would apply on a primary basis.
 {¶ 43} Other courts have considered claims of ambiguity in similar policies and rejected those claims. For example, in Hower v. MotoristsMut. Ins. Co. (1992), 65 Ohio St.3d 442, overruled on other grounds inSavoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, the first paragraph of the syllabus states, "[t]he language in an automobile insurance policy that `[i]f this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any policy' is not ambiguous and is a valid anti-stacking provision." Likewise, the court of appeals in Lemble v. Belknap (Sept. 30, 1999), Lucas App. No. L-98-1417, found that language providing that "any recovery for damages for bodily injury sustained by an insured may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance" was not ambiguous.
 {¶ 44} We find that the Allstate policy language does not differ from the cited cases in any material respect; hence, it is not ambiguous.
 III {¶ 45} For his final argument, Campo argues that the court erred by refusing to grant underinsured motorist coverage by operation of law under the Campos' condominium owner's policy. The Campos' condominium owner's policy contains a "family liability protection" that provides liability coverage with $100,000 that excludes bodily injury arising out of the use of "any motor vehicle" but then goes on to provide that the exclusion does not apply to "bodily injury to a residence employee." A "residence employee" is defined as an employee "performing duties arising out of and in the course of employment in connection with the maintenance or use" of the premises. Campo maintains that the mere mention of motor vehicle insurance required that, as a matter of law in force at the time the parties entered into the insurance contract, uninsured and underinsured motorist coverage had to be offered under the policy, and that the failure to so offer uninsured and underinsured motorist coverage means that the coverage applies as a matter of law under Abate v. PioneerMut. Cas. Co. (1970), 22 Ohio St.2d 161, 163.
 {¶ 46} The short answer to Campo's argument is that this court, and nearly every other court in the state, has consistently rejected it. See Davis v. Shelby Ins. Co. (2001), 144 Ohio App.3d 468, conflict certified, 93 Ohio St.3d 1475,; Hillyer v. State Farm Fire Casualty Co.(Aug. 2, 2001), Cuyahoga App. No. 79176; Brozovic v. StateFarm Fire Casualty Co. (Sept. 13, 2001) Cuyahoga App. No. 79084. See, also, Tate v. State Farm Cas. Ins. Co. (S.D.Ohio 2002),184 F. Supp.2d 713, 716-717 (collecting cases).
 {¶ 47} We are aware, of course, that this issue is currently pending before the Ohio Supreme Court based on the certification of a conflict between our decision in Davis and Lemm v. The Hartford (Oct. 4, 2001), Franklin App. No. 01 AP-251, conflict certified, 93 Ohio St.3d 1475. Davis remains the law in this district until such time as the Supreme Court resolves this issue. In response to Lemm, we would only add to its conclusion that a homeowner's policy providing an exception for residence employees cannot rationally form the basis for imposing uninsured or underinsured motorist coverage as a matter of law. Lemm works a complete perversion on the parties' intent when entering into the contract because there can be no doubt that neither Campo was a "resident employee." Insurance policies are contracts, and unless and until that fundamental principle of law is changed, there can be no recovery under the resident employee exclusion as used in this case.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., CONCURS IN JUDGMENT ONLY.
 COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R.22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).