Cincinnati Motor Transportation Assn. et al., Appellees, *v.* City of Lincoln Heights, Appellant.

(No. 70-120—Decided March 10, 1971.)

204

*Messrs. Steer, Strauss, White & Tobias, Mr. Charles H. Tobias, Jr.,* and *Messrs. Lindhorst & Dreidame,* for appellees.

*Messrs. Weiland & Neman* and *Mr. Albert H. Neman,* for appellant.

CORRIGAN, J. The question to be determined in this appeal, *i. e.,* the validity of an ordinance prohibiting vehicles of specified weights from using certain streets within a municipality has been presented to this court on several prior occasions. *Froelich* v. *Cleveland* (1919), 99 Ohio St. 376; *Perkins* v. *Quaker City* (1956), 165 Ohio St. 120; *Richter Concrete Corp.* v. *Reading* (1957), 166 Ohio St. 279; *Union Sand & Supply Corp.* v. *Fairport* (1961),

172 Ohio St. 387. See, also, *Perrysburg* v. *Ridgway* (1923), 108 Ohio St. 245.

The syllabus in the *Union Sand & Supply Corp.* v. *Fairport* case summarizes the law in such cases, as follows:

"By virtue of Section 3, Article XVIII of the Constitution of Ohio, conferring upon municipalities all powers of local self-government and authorizing them to adopt and enforce local police regulations, fortified by Sections 715.22 and 723.01, Revised Code, prescribing the rights and duties of municipalities with respect to their streets, a municipal corporation may by ordinance reasonably control the weights of vehicles using its highways and streets, notwithstanding that such ordinance fixes lesser weights than those permitted by statute."

Inasmuch as a municipality may "reasonably control the weight of vehicles using its highways and streets," the specific question to be decided here, upon which the courts below reached different conclusions, is whether Ordinance No. 69-2 of the city of Lincoln Heights is reasonable.

Plaintiffs urge that this appeal "is essentially a request to this court to do what by statute it does not do, *i. e.,* weigh the evidence * * *." However, as Judge Zimmerman stated in *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140, 144:

"It is well established in Ohio * * * that the Supreme Court is not required to and ordinarily will not weigh evidence, but it will examine the record to determine whether the evidence produced in a trial attains that degree of probative force and certainty which the particular case demands * * *."

In passing on the constitutionality of the ordinance in question we start with the proposition, as stated in *Union Sand & Supply Corp.* v. *Fairport, supra* (172 Ohio St. 387, 391), that "municipal corporations have broad powers and duties with respect to the streets and highways within their limits." Appellees, conversely, have the burden of establishing that the ordinance is unreasonable.

The test of reasonableness in such a case is expressed

in paragraph three of the syllabus in *Froelich* v. *Cleveland, supra* (99 Ohio St. 376), thusly:

"* * * The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation."

We note here that the city of Lincoln Heights is almost exclusively a residential community (99.5% residential and .5% business and industrial) and that the apparent purpose of the ordinance is to maintain the tranquillity necessary to preserve its residential character. There was evidence that when heavy trucks traveled Shepherd Lane the residents were sometimes unable to conduct normal conversation, that their sleep was sometimes interrupted and that vibrations from the trucks had caused damage to residences. These circumstances indicate that the only feasible method by which the municipality could preserve its residential character was for it to regulate truck traffic by ordinance.

Giving due consideration to the residential nature of the municipality, we are of the opinion that the means adopted by the ordinance bear "a real and substantial relation to their purpose" and are "suitable to the end in view."

It must further be determined whether the ordinance is "unduly oppressive" and whether it interferes "with private rights beyond the necessities of the situation."

Although plaintiffs point out that Shepherd Lane is the shortest route between their terminals and Interstate 75, they do not contend that there are no alternate routes. In fact, the evidence discloses that there are alternate routes which can be utilized by plaintiffs even though they may be, as the Court of Appeals characterized them, "circuitous * * * and considerably longer than the direct path afforded were the use of Shepherd Lane not prohibited."

The mere existence of these available alternate routes supports the reasonableness of the ordinance. The facts

that the alternate routes available to plaintiffs are circuitous and that Shepherd Lane is the shortest route are not sufficient to establish that the ordinance is either ''unduly oppressive'' or that it interferes ''with private rights beyond the necessities of the situation.''

It must be kept in mind that the reasonableness of the ordinance is not measured alone by the inconvenience to plaintiffs but also by the desire of the municipality to retain its residential character. It should be observed that inconvenience to truckers necessarily will follow any regulation of truck traffic by a municipality.

Giving full consideration to the residential character of the defendant city and of Shepherd Lane and likewise to the inconvenience which the ordinance causes plaintiffs, and further, upon a careful examination and consideration of the entire record, it is our determination that the evidence before the Court of Appeals, in the trial *de novo* below, does not attain that degree of probative force and certainty which this particular case demands in order to hold that Ordinance No. 69-2 of the city of Lincoln Heights is unreasonable. On the contrary, from the calm sea level of common sense the record compels the conclusion that it is reasonable and lawful.

The reasonableness of this ordinance is dependent upon whether it is fairly appropriate to the purpose under all the circumstances reflected by the record and whether it represents a bona fide exercise of the reasonable discretion of the council. The means adopted must be suitable to the end in view, must be impartial in operation, must not be unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation.

The reasonableness of a muncipal ordinance, we must point out, is a question of law for the court and depends upon the peculiar facts in each case. In making such a determination the court should consider the rights of all the citizens affected by it. Moreover, upon the theory that the

city council is in a better position to understand and note the needs of the community than a reviewing court, courts should strive to respect the acts of municipal legislative bodies determining what legislation is reasonably necessary for the good and welfare of its community. Accordingly, we are of the opinion, and so hold, that Ordinance No. 69-2 of the city of Lincoln Heights is reasonable, and therefore is constitutional.

The judgment of the Court of Appeals is reversed and final judgment is rendered for defendant city.

*Judgment reversed.*

O'NEILL, C. J., SRAUSBAUGH, HERBERT, MANOS and STERN, JJ., concur.

LEACH, J., dissents.

STRAUSBAUGH, J., of the Tenth Appellate District, sitting for SCHNEIDER, J.

MANOS, J., of the Eighth Appellate District, sitting for DUNCAN, J.

LEACH, J., dissenting. In its appeal to this court, appellant's complaint was based in large part on the premise that the Court of Appeals failed to "give credence to the findings of fact of the trial court." This case, however, was heard and determined by the Court of Appeals as a law and fact appeal, thus involving a trial *de novo* in that court.

In *Lincoln Properties* v. *Goldslager* (1969), 18 Ohio St. 2d 154, this court held in the first and second paragraphs of the syllabus:

"1. A trial *de novo* is an independent judicial examination and determination of conflicting issues of fact and law, notwithstanding the evidence before the appellate

court consists of the record of the proceedings in the lower tribunal.

"2. Parties to an appeal on questions of law and fact are entitled to a trial *de novo,* and the appellate court must determine the facts and give judgment disposing of the issues of law and fact as if no trial had been had in the lower tribunal."

In my opinion, the question of whether the ordinance herein was unreasonable is essentially one of fact, for the determination in a law and fact appeal by the Court of Appeals. Its judgment in such respect should be overturned by this court only where reasonable minds could not arrive at such a conclusion.

As I understand this case, appellant herein did *not* assert that the state of the evidence was such that there was a *failure* of probative evidence to warrant or permit a finding of unreasonableness in the application of the ordinance to the street in question, but, in effect, asserted that such a finding of unreasonableness was contrary to the *weight* of the evidence.

Under the state of the *record* herein, I do not understand how this court may arrive at a factual conclusion contrary to the finding of fact of the Court of Appeals except by independently *weighing* the evidence.

In my opinion, the conclusion of the Court of Appeals that the effect of the ordinance was to *prohibit all* east-west truck traffic through Lincoln Heights, either on Shepherd Lane or otherwise, and was unreasonable as applied to the use by plaintiffs of Shepherd Lane, was *warranted* by the evidence.

The practical effect of such ordinance is to deny all eastbound truck traffic use of an access point onto an interstate highway, such interchange connecting directly with Shepherd Lane within Lincoln Heights. The effect of the ordinance is to compel all of plaintiff's trucks to traverse the streets of another municipality to enter the interstate highway at a distant access point. The particular ordinance in question was enacted in 1969, long after the

opening of the interchange and long after the building of plaintiff's interstate truck terminals.

Although any residential property owner or tenant is disturbed by the passage of trucks on his street, and would prefer that the trucks traverse some other street, under all the attendant facts as they exist herein, I believe that the Court of Appeals, faced with a "Solomon Decision" and weighing all the "pros and cons" necessarily involved, was *justified* in the conclusion which it reached.