**CITY OF AKRON ex rel. CHRISTMAN–RESCH et al., Appellants,**

v.

**CITY OF AKRON et al., Appellees.**

[Cite as *Akron ex rel. Christman–Resch v. Akron,* 159 Ohio App.3d 673, 2005-Ohio-715.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 22140.

Decided Feb. 23, 2005.

674

J. Jeffrey Holland, for appellants.

Max Rothal, Akron Director of Law, Deborah M. Forfia and Tammy L. Kaszowski, Assistant Directors of Law, for appellees.

SLABY, Presiding Judge.

{¶ 1} Appellants, Deanne Christman–Resch, Thelma W. Brettschneider, Rachel M. Neuwirth, Gerald L. Thomas–Moore, Kimberly Whittington, and Susan Rich-

ardson, on behalf of the city of Akron, appeal from the judgment of the Summit County Court of Common Pleas that granted summary judgment to appellees, the city of Akron, Mayor Donald L. Plusquellic, and Council President Marco Sommerville. We affirm.

## I

{¶ 2} During March and June 2002, Akron City Council passed Ordinances 132–2002 and 332–2002, amending Akron City Code 92.01, 92.13, and 92.15 in order to establish a new criminal offense for permitting a cat to run at large. The ordinances further authorized the city animal-control warden to seize and impound cats running at large, while requiring him also to keep a registry of impounded cats.[1]

{¶ 3} Appellants, citizens of Akron and cat owners, filed suit on August 20, 2004, seeking declaratory judgment that the new code sections as applied to cats were unconstitutional. Two of the appellants further sought damages for conversion, deprivation of rights, and loss of property due to the alleged seizure and destruction of cats owned by those appellants. Appellees filed a motion to dismiss or, in the alternative, for summary judgment. The trial court granted appellees' motion for summary judgment on May 4, 2004. Appellants timely appealed, raising one assignment of error for our review.

## II

### ASSIGNMENT OF ERROR

The trial court erred to the substantial prejudice of Appellants by granting [Appellees'] motion for summary judgment.

---

1. {¶ a} Akron City Code 92.01(B) states:
    {¶ b} No person being the owner, keeper or harborer of or having charge of horses, mules, cattle, sheep, goats, swine, dogs, cats, geese, or other fowl or animals shall permit the same, except homing pigeons bearing official bands, to run at large on any public way or on any public ground or upon the private property of another.
    {¶ c} The code further defines "at large" as "[o]ff the premises of the owner and not under restraint by leash, cord, wire, strap, chain, or similar device or fence or secure enclosure adequate to contain the animal." Akron City Code 92.01(A)(1).
    {¶ d} The second section in question, Akron City Code 92.15(A), states:
    {¶ e} It shall be the duty of the City Animal Control Wardens to apprehend any dog or cat found running at large and impound such dog or cat at the County Shelter or other designated facilities equipped to provide a suitable place for kenneling animals, make proper provision for the feeding and care of the same and provide humane devices and methods for destroying animals. The Animal Control Wardens shall make a complete registry entering the breed, color and sex of the dog or cat including the license number or microchip number, if known.

{¶ 4} In their only assignment of error, appellants assert that the trial court erred by granting summary judgment to appellees when questions of material fact still existed as to whether the code as implemented violated appellants' constitutional rights. We disagree.

{¶ 5} Summary judgment is proper under Civ.R. 56(C) if

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. This court reviews the trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Any doubt must be resolved in the favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 6} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and is to identify portions of the record that demonstrate absence of genuine issues of material fact as to an essential element of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The burden then shifts to the nonmoving party to offer "specific facts showing that there is a genuine issue for trial." Id. See, also, Civ.R. 56(E). The nonmoving party may not rest on the mere allegations and denials in the pleadings, but must submit some evidentiary material showing a genuine dispute over the material facts. *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264.

{¶ 7} Appellants assert error in multiple respects, ranging from the weight of the evidence to immunity, as they relate to specific acts and policies of appellees in relation to the trapping and euthanization of free-roaming cats. Before analyzing each issue, however, we must first consider the scope of the evidence properly before us.

A. Affidavit of Appellant Christman–Resch

{¶ 8} Appellants assert that the trial court improperly struck certain paragraphs contained in the affidavit of appellant Christman–Resch that detailed the euthanization statistics of cats impounded at the Summit County Animal Shelter. Appellees filed a motion to strike certain information in the affidavit because it was irrelevant and inadmissible on the basis that appellants failed to supplement discovery to include the information and could not attempt to assert new facts via the affidavit. The trial court agreed with appellees, finding that the affidavit "contained inadmissible and irrelevant evidence."

{¶ 9} On appeal, appellants state that the paragraphs are admissible as a summary of voluminous records under Evid.R. 1006, an argument never tendered to the trial court. Appellants, however, make no effort to show why the stricken information is either relevant or admissible in light of their failure to supplement discovery responses to include those facts. Even if we accept as true that the information would not be hearsay, appellants have failed to show why the trial court was incorrect in finding that the information was not relevant and inadmissible due to appellants' failure to supplement discovery under Civ.R. 26(E). Accordingly, we overrule appellants' assignment of error in this regard and will not consider on appeal any of the information struck by the trial court.

B. Akron City Code Sections and Operative Facts

{¶ 10} The code sections in question oblige the city animal-control warden to impound a cat that is found running at large, i.e., "off the premises of the owner and not under restraint by leash, cord, wire, strap, chain, or similar device or fence or secure enclosure adequate to contain the animal." Akron City Code 92.01(A) and (B); Akron City Code 92.15(A). Following impoundment, the city animal-control warden must ensure proper care and feeding of the animals and "provide humane devices and methods for destroying animals." Akron City Code 92.15(A).

· {¶ 11} The city animal-control wardens enforce the ordinances by trapping, or picking up already trapped cats, only in response to complaints made by residents of the city. If a person calls to complain about a cat that has strayed onto his property, the wardens may issue a cat trap to the person with instructions regarding operation and surveillance of the trap.[2] The wardens, however, do not randomly drive up and down city streets seeking wayward cats to apprehend. They capture and impound animals only after someone has lodged a complaint regarding that animal.

{¶ 12} Impounded animals are transported to the Summit County Animal Shelter for proper treatment. If an impounded cat has any form of identification, including a collar or microchip, the shelter will attempt to notify the owner either via a telephone call or a personal visit to the owner's residence. For all cats

---

2. These regulations require the keeper of the trap to provide food and water in the trap at all times, locate the trap where it is visible and not in direct sunlight, check the trap regularly every one to four hours, close the door to the trap when the person will not be available to check it regularly or no animal warden remains on duty to collect a trapped animal (animal wardens generally remain on duty between 8 a.m. and 4 p.m. during the winter and 8 a.m. and 7:30 p.m. during the summer), refrain from using the trap in inclement weather (cold, hot, wet, snowy, or icy conditions) unless approved by the warden for humane purposes, report the entrapment of any animal to the warden immediately, and release any trapped animal if the warden is unavailable to pick it up within two to four hours.

lacking identification, the shelter has a policy of keeping them for three additional business days following the date of impoundment, giving an owner the time to discover that his cat is missing and travel to the shelter to redeem him. Healthy cats that do not pose a danger to other animals or humans at the shelter are routinely kept as long as possible and are never euthanized until at least the three-day waiting period has expired. Cats that are a danger to keep, including feral and ill cats, and cats that are in great pain due to injury or illness, however, may be euthanized the day they are impounded. Contrary to appellants' assertions, there is no evidence on the record before us that healthy, nonferal, impounded cats are routinely euthanized the day of impoundment.

{¶ 13} Appellees offered evidence that the city's Customer Service Division received approximately 400 complaints about cats every year. Callers complained about a variety of problems, including damage to property, cars, flower beds, shrubbery, gardens, and yards, damage caused by cats spraying on windows, health issues, and safety concerns related to cats darting into traffic.

{¶ 14} In addition to this testimony, appellants, over the objection of appellees, called two city council members to testify at a preliminary-injunction hearing.[3] Both members stated that they received numerous complaints about cats running at large during their tenure as council members. One testified about cats scratching cars, defecating in gardens and flower beds, ruining property, attacking fenced-in dogs, and even using a child's sandbox as a litter box, causing the child to become ill. The second also provided general details about health-related complaints she had received: callers often complained about the exacerbation of asthma caused by free-roaming cats, as well as other health issues that sometimes required hospitalization.

{¶ 15} Appellees further offered evidence of certain diseases that could be spread to people or domestic animals by free-roaming cats, including rabies, abscess, toxoplasmosis, cutaneous larval migrans, and echinococcus visceral larval migrans. Statistics regarding rabies, provided by information published by the Ohio Department of Health, supported the reality that cats were at high risk for contracting rabies. At no time prior to appeal did appellees object to the admissibility of any of this evidence.

{¶ 16} In response to this evidence, appellants offered the affidavit of Rebecca Robinson, the National Director of Alley Cat Allies. Her affidavit stated the following: (1) stray cats are not the same as feral cats, (2) stray and feral cats

---

3. The preliminary-injunction hearing was actually conducted in the original proceeding in this matter, which was dismissed without prejudice by appellants and immediately refiled. The trial court permitted appellees to use the transcribed testimony from the original suit, finding that it would be unfair to appellees to permit appellants to begin anew on the same issues by merely refiling their case after a voluntary dismissal.

will attack only when they feel cornered or threatened, (3) "feral cats are generally in good health and condition and pose little threat to human health," (4) the presence of feline disease is the same among unowned free-roaming cats and owned cats, (5) implementation of nonlethal stray and feral cat control (i.e., spay and neuter programs) helps to decrease the impoundment rate and amount of complaints relating to stray and feral cats, (6) implementation of lethal control for stray and feral cats (i.e., trap and kill) does not lead to a decrease in the impoundment rate, (7) "although cats are now the domestic animal with the highest rabies rate, that rate is consistently very low, ranging between three and four percent of reported cases," (8) no reported rabies case between 1990 and 2002 originated from a cat, (9) nonlethal programs foster less adversity between cat owners and those who complain about stray animals, and (10) "curbing the stray animal population [is] better accomplished with aggressive spay/neuter programs" than trap-and-kill programs.

{¶ 17} The affidavit also explained that use of humane traps is safe only under controlled circumstances: the trap must be constantly monitored so that other animals and persons do not harm the trapped cat, the neighborhood where the trap is located must be notified in order to prevent trapping of pets, and the trap must not be used in extreme temperatures, harsh climates, or inclement weather. Robinson noted that the traps, even when properly monitored and used, may still cause harm to any animal that becomes trapped, panics, and thrashes around inside the trap.

{¶ 18} Although appellants expend a great deal of paper explaining the possible abuses a person might inflict upon a trapped cat and recite a list of qualifications they would like to impose upon those who request a humane trap (e.g., no felony convictions, citizen of the city), they fail to offer any evidence that any person has ever abused a trapped animal. They further fail to show that a convicted felon or noncitizen is more likely to abuse an animal caught in a humane trap than any other person.

C. Analysis of Issues

{¶ 19} Appellants raise six separate issues related to the evidence before us: whether the ordinances are constitutional in light of (1) substantive due process, (2) procedural due process, (3) equal protection, (4) the Fourth Amendment regulation of unreasonable search and seizures, (5) whether the ordinances improperly delegate police authority to private individuals, and (6) whether trapping and euthanization of cats is a governmental function, rendering appellees immune for damages caused by the alleged euthanization of cats owned by two of the appellants. We will consider each separate argument in turn.

### 1. Substantive Due Process

{¶ 20} Appellants first assert that the trial court erred by applying an incorrect analytical test and failing to consider the evidence in a light most favorable to appellants when determining whether the ordinances violated substantive due process rights. Specifically, appellants contend that the trial court failed to consider whether the at-large ordinance and subsequent impoundment of cats were unreasonable and whether impoundment and subsequent destruction of cats by euthanization are unduly oppressive to cat owners, interfering with private property rights irrespective of any necessity. Appellants further argue that the trial court considered the evidence before it in an improper light, failing to give the proper weight to appellants' evidence on summary judgment. We disagree.

{¶ 21} Legislation is presumed constitutional unless the challenger shows a violation of a constitutional provision beyond a reasonable doubt. *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323. A municipality may

> make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community. But neither the state nor a municipality may make any regulations which are unreasonable. The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation.

*Froelich v. Cleveland* (1919), 99 Ohio St. 376, 124 N.E. 212, paragraph three of the syllabus. Similarly, legislation comports with federal due process rights where the legislation bears a rational relationship to its purpose. *Desenco*, 84 Ohio St.3d at 545, 706 N.E.2d 323. The reasonableness of municipal ordinances is a question of law for the court. *Cincinnati Motor Transp. Assn. v. Lincoln Hts.* (1971), 25 Ohio St.2d 203, 208, 54 O.O.2d 317, 267 N.E.2d 797. The party challenging the ordinance on constitutional grounds has the heavy burden of negating every reasonable basis that might support the enactment of the ordinance. *Porter v. Oberlin* (1965), 1 Ohio St.2d 143, 151, 30 O.O.2d 491, 205 N.E.2d 363.

{¶ 22} Even when viewing the evidence before us in the light most favorable to appellants, they still fail to offer evidence showing that the ordinances are unsupported by any rational basis. See id. For example, appellants do not assert that free-roaming cats do not scratch cars, defecate in gardens, spray windows, and carry disease that may be spread to both humans and other animals. Appellants further do not show that trapping and euthanization of cats do not help to alleviate these free-roaming-cat concerns. Cats that are trapped

and euthanized are incapable of continuing to cause damage. Although spay and neuter programs may have been shown to be more effective at curbing complaints regarding free-roaming cats, appellants never opine that trap-and-kill policies lack that same effect on a more limited basis. The city need not adopt the perfect solution; it need only adopt one that is supported by a rational basis causally connected to the problem at hand.

{¶ 23} In relation to humane traps, appellants have never asserted that the grant of a humane trap to person upon request is not rationally related to curbing the problems associated with free-roaming cats. Instead, they consistently bewail the possibility of abuse that a trap holder might inflict upon a trapped animal. Appellants, however, failed to offer any evidence supporting the assertion.

{¶ 24} A municipal government's familiarity with community conditions and the needs of citizens leaves it in the best position to formulate appropriate legislation to combat problems within the municipality. *Akron v. Tipton* (1989), 53 Ohio Misc.2d 18, 20, 559 N.E.2d 1385, citing *Allion v. Toledo* (1919), 99 Ohio St. 416, 420, 124 N.E. 237. Animal-control laws necessary to protect citizens, including those related to euthanization, do not violate due process rights even though some harmless or inoffensive animals might by destroyed. *Tipton,* 53 Ohio Misc.2d at 20, 559 N.E.2d 1385. The city's ordinances and policies that lead to the trapping and euthanization of free-roaming cats likewise do not violate due process.

{¶ 25} Contrary to appellants' assertions, the trial court applied the correct test, considering whether the ordinances bore a substantial relation to the elucidated problems and were not arbitrary, discriminatory, capricious, or unreasonable. Appellants have failed to show that no rational basis supports the enactment of the ordinances. The ordinances interfere only minimally with individual rights and are not unduly oppressive: a cat owner need only prevent his animal from trespassing upon another's property in order to satisfy the mandates of the ordinances. Further, appellants have failed to meet their burden of showing a clear and palpable abuse of police power necessary to challenge the constitutionality of any city policy regarding trapping and euthanization. See *Zageris v. Whitehall* (1991), 72 Ohio App.3d 178, 185, 594 N.E.2d 129; *Downing v. Cook* (1982), 69 Ohio St.2d 149, 151, 23 O.O.3d 186, 431 N.E.2d 995. Even considering the evidence before us in a light most favorable to appellants, the trial court properly granted summary judgment on this issue. Accordingly, we overrule appellants' assignment of error in this regard.

2. Procedural Due Process

{¶ 26} In another subissue, appellants argue that appellees' acts of cat euthanization, often within 24 hours of impoundment, violate an owner's due

process rights by taking away his property without proper notice or an opportunity to be heard. As this court has no evidence before it that cats are improperly euthanized within 24 hours of impoundment, we will consider this argument in light of the policy of the Summit County Animal Shelter to hold all healthy, nonferal cats for at least three days following the initial date of impoundment.

{¶ 27} In order to determine what procedure is necessary to comport with due process, we must consider (1) the private interests affected by the action, (2) the risk of any erroneous deprivation of that interest, (3) the probable value of additional safeguards, and (4) the government's interest, including financial and administrative burdens that additional procedures would require. *Mathews v. Eldridge* (1976), 424 U.S. 319, 334–335, 96 S.Ct. 893, 47 L.Ed.2d 18. Under the challenged ordinances, a cat owner may be deprived of the life and companionship of his pet if the owner fails to redeem the animal within the three-day time period. The Ohio Supreme Court has previously held that such a deprivation, in furtherance of a reasonable law enforcement objective, does not constitute a taking or violate due process. *Porter*, 1 Ohio St.2d at 149, 30 O.O.2d 491, 205 N.E.2d 363.

{¶ 28} Given the three-day redemption period, there also exists little risk of erroneous deprivation of an owner's rights. He should know within that time period that his cat has vanished and make some effort to locate his missing property. He may also provide even greater protection of his right to his property by either collaring or microchipping his pet so that the Summit County Animal Shelter can immediately notify him if it received his pet. A pet owner may also minimize his risk greatly simply by keeping his pet restrained on his own property, preventing the animal from trespassing on another's land.

{¶ 29} Finally, alternative safeguards, when considered with the accompanying administrative and financial burdens, simply do not make sense: sheltering animals indefinitely would lead to exorbitant support costs; an arbitrary extension of the redemption period has not been shown to have any effect on redemption rates; and the financial burden of creating an investigative or advertising division in charge of locating the owners of stray cats, especially when a large number of those animals have no owner, would be substantial. In any of these situations, this court cannot say that the minimal risk of erroneous deprivation of a pet cat could ever overcome the necessary financial and administrative burden of searching for every cat owner, existent or not. Appellants have not offered any evidence to the contrary. Accordingly, in consideration of the due process factors, we overrule appellants' assignment of error in this regard.

3. Equal Protection

{¶ 30} In this next subissue, appellants argue that the city's application of the ordinances violates the Equal Protection Clause by treating dog owners

more favorably than cat owners. Appellants admit that the ordinances are identical on their face but insist that the ordinances are unequally applied in practice, as evidenced by the euthanization of cats for minor, treatable issues or on the basis that they are feral within 24 hours of impoundment, whereas dogs are not euthanized for those same reasons. We find appellants' arguments meritless.

{¶ 31} The limits placed upon government action by the Equal Protection Clauses of the United States Constitution and Ohio Constitution are "essentially identical." *Beatty v. Akron City Hosp.* (1981), 67 Ohio St.2d 483, 491, 21 O.O.3d 302, 424 N.E.2d 586. Equal protection guarantees do not invalidate all legislative classifications but rather require reasonable grounds supporting disparate treatment between those within and outside of a designated class. Id. Where no suspect class or fundamental right is involved, unequal treatment of classes or persons may be upheld where a rational basis exists to support the inequality. *Cincinnati City School Dist. Bd. of Edn. v. Walter* (1979), 58 Ohio St.2d 368, 373, 12 O.O.3d 327, 390 N.E.2d 813. Implicit in the invocation of equal protection, however, is a party's burden of establishing that differing classes of persons are being treated differently either on the face of a law or in its application. *Yick Wo v. Hopkins* (1886), 118 U.S. 356, 368, 6 S.Ct. 1064, 30 L.Ed. 220.

{¶ 32} There is no evidence before us that cats and dogs are treated differently by the Summit County Animal Shelter in either euthanization policy or practice. Although the testimony of one shelter employee suggested that the entire population of the shelter's cattery had been euthanized on one occasion in order to alleviate a massive flea infestation among the cats, appellants have presented nothing that indicates that cats are routinely euthanized for simple, treatable conditions, whereas dogs are not. Instead, all healthy, nonferal animals are kept for at least three days following impoundment to allow an owner time to redeem the animal, and the shelter attempts to contact the owner of all animals bearing identification. As appellants have failed to show that different classes of people are being treated differently, we overrule this particular issue and find no equal protection violation on the face of the ordinances or in their application.

4. Search and Seizure

{¶ 33} Appellants also argue that the impoundment of cats results in an improper, warrantless seizure of private property in violation of the Fourth Amendment. Appellants specifically assert that the city's acts in providing humane animal traps to anyone in the city upon request leads to a reasonable inference that "such action will result in cats which are lawfully on the premises of their owners * * * being lured into traps and seized." We find appellants' assertions meritless.

{¶ 34} The Fourth Amendment of the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated * * *." Cats, as pets, qualify as property that may be seized. See *Newsome v. Erwin* (S.D.Ohio 2000), 137 F.Supp.2d 934, 943. Pets, however, may be seized as an exercise of police power when guided by concerns of public health and welfare. *Sentell v. New Orleans & Carrollton R.R. Co.* (1897), 166 U.S. 698, 704, 17 S.Ct. 693, 41 L.Ed. 1169; *Nicchia v. New York* (1920), 254 U.S. 228, 230, 41 S.Ct. 103, 65 L.Ed. 235. As already noted, the seizure of free-roaming cats is rationally based upon concerns for health or welfare. The seizure of a pet cat, while on the property of another in violation of the at-large ordinance, is reasonable in light of previously enumerated health and safety concerns.

{¶ 35} Further, there is no evidence in the record that the city trespasses unwanted onto a cat owner's property in order to seize a cat. Animal wardens enter property only with the consent of the property owner or occupier in order to respond to complaints made by that person. The city's agents do not trespass onto private property; they are invited onto it. No warrant is necessary. See *State v. Cooper*, 9th Dist. No. 21494, 2003-Ohio-5161, 2003 WL 22232442, at ¶ 12, citing *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854. Accordingly we find that the city has not violated the Fourth Amendment by seizing free-roaming cats in response to complaints by persons while those cats are trespassing on that person's property. We overrule appellants' arguments in this respect.

5. Delegation of Police Authority

{¶ 36} In this subissue, appellants contend that the city improperly delegated police authority to private citizens by issuing humane cat traps to those who asked for them. Appellants equate the trapping of free-roaming cats to a public power or trust that requires exercise of discretion and judgment that cannot be delegated to a private citizen. "It is axiomatic that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal." *State v. King* (June 30, 1997), 4th Dist. No. 96 CA 39, 1997 WL 381784, citing *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 220, 574 N.E.2d 457. Appellants failed to raise this argument before the trial court and have therefore waived it on appeal. Accordingly, we overrule appellants' arguments in this respect.

6. Immunity

{¶ 37} In their final subissue, appellants assert that appellees may not claim sovereign immunity for the euthanization of cats owned by two of the

appellants. Specifically, appellants claim that they have shown the deprivation of a right under color of law, a prerequisite to invocation of liability under Section 1983, Title 42, U.S.Code, which accords a party the right to punitive damages in certain circumstances. They have additionally argued that the seizure and euthanization of cats are proprietary functions for which the city lacks immunity under R.C. 2744.02(B)(2). We disagree.

{¶ 38} In order to support a claim under Section 1983, Title 42, U.S.Code appellants must show that (1) they have been deprived of a federal right and (2) that the city deprived them of that right under color of law. *Cooperman v. Surgical Assoc., Inc.* (1987), 32 Ohio St.3d 191, 199, 513 N.E.2d 288, citing *Gomez v. Toledo* (1980), 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572. As already examined thoroughly above, appellants have not been deprived of any federal right. Therefore, the trial court properly granted summary judgment to appellees on any claim made by appellants under Section 1983, including any claim for punitive damages.

{¶ 39} R.C. 2744.02(A)(1) extends blanket immunity to political subdivisions, like the city, for governmental functions. Governmental functions are those that (1) are "imposed upon the state as an obligation of sovereignty" and performed by a political subdivision, (2) promote the common good of all citizens, including the preservation of public peace, safety, and health, and (3) typically are not engaged in by nongovernmental actors. R.C. 2744.01(C)(1). Any function that involves enforcement of the law is a governmental function. R.C. 2744.01(C)(2)(i).

{¶ 40} Akron City Code 92.01(D) states, "The running at large of any [cat] in or on [the property of one other than its owner] is prima facie evidence that it is running at large in violation of this section." The city's trapping of any cat found running at large, therefore, equates to a law enforcement function, and immunity attaches under R.C. 2744.02(A)(1). See *Studer v. Seneca Cty. Humane Soc.* (May 4, 2000), 3d Dist. No. 13–99–59. Accordingly, the trial court properly found that the city's actions were covered by sovereign immunity. We overrule this portion of appellants' assignment of error.

## III

{¶ 41} We overrule appellants' assignment of error and affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

WHITMORE, J., concurs.

CARR, J., concurs in judgment only.