OPINION
{¶ 1} Carroll High School ("CHS") appeals from a judgment of the Montgomery County Court of Common Pleas, which affirmed the decision of the Riverside Board of Zoning Appeals ("BZA") to require CHS to construct sidewalks and curbs, pursuant to Riverside City Ordinance 1341.01.
 {¶ 2} CHS is a private educational facility located on Linden Avenue in the City of Riverside, Ohio. On December 13, 2001, CHS submitted a permit application with the City to construct an activity center as an addition to its existing school building. The City's Zoning Administrator, Craig Kenley, conditioned the permit on CHS installing curbs and sidewalks along Linden Avenue, pursuant to Riverside City Ordinance 1341.01. Section 1341.01 provides:
 {¶ 3} "(a) Whenever lot improvements, including building additions, additional buildings totaling twenty-five percent (25%) or more of the existing square footage of the principal existing building or structure, in any zoning district, the issuance of a building permit for such improvement may be conditioned upon a sidewalk and/or curb being installed at the expense of the permit applicant; provided however, that such requirement shall not apply to an existing principal single family dwelling on a residentially zoned lot.
 {¶ 4} "(b) The requirement to install a sidewalk and/or curb shall be made by the Zoning Administrator, based upon vehicular and pedestrian traffic reasonably to be expected in the neighborhood and upon all other relevant conditions found to exist within the applicable area. A decision by the Zoning Administrator that sidewalks and/or curbs shall be installed may be appealed by the permit applicant as a final decision to the Board of Zoning Appeals pursuant to the provisions of Section 1135.04 of the Code of Ordinances. Prior to making a decision on said appeal, the Board of Zoning Appeals shall obtain the written recommendation of the Planning Commission."
 {¶ 5} In December 2002, CHS brought a mandamus action against the City, seeking to compel the Zoning Administrator to issue the zoning permit. Pilarczyk v. City of Riverside, Montgomery Case No. 02-CV-8212. Shortly thereafter, the court entered an agreed order and judgment, which required the Zoning Administrator to issue the zoning permit to CHS by December 13, 2002. The issuance was subject to a subsequent determination by the Zoning Administrator as to whether curbs and sidewalks were required. The judgment and order further provided that CHS would have the right to appeal that determination in accordance with the Riverside Code of Ordinances and R.C. Chapter 2506. The Zoning Administrator subsequently determined that, in accordance with section 1341.01, CHS was required to install sidewalks and curbs along the entire 880.57 feet of Linden Avenue frontage. In calculating that the square footage of CHS's proposed activity center totaled more than twenty-five percent of the principal building, the Zoning Administrator considered the footprint square footage of the buildings.
 {¶ 6} CHS filed an appeal with the BZA. On April 17, 2003, the BZA voted, by a vote of three to one, to uphold the Zoning Administrator's decision to require the installation of curbs and sidewalks as a condition of the zoning permit. CHS appealed the BZA's decision to the Montgomery County Court of Common Pleas, pursuant to R.C. Chapter 2506. On August 18, 2004, the court affirmed the BZA's decision, concluding that the BZA's decision to use the outside perimeter of the building in determining the square footage under section 1341.01 was supported by a preponderance of reliable, probative, and substantial evidence. The trial court further found that the Zoning Administrator and the BZA had not abused their discretion under section 1341.01(b) when they required CHS to install sidewalks and curbs. The trial court rejected CHS's argument that the BZA had acted unconstitutionally.
 {¶ 7} CHS appeals the trial court's judgment, raising three assignments of error.
 {¶ 8} "I. THE TRIAL COURT ERRED BY INCORRECTLY APPLYING THE RULES OF STATUTORY CONSTRUCTION, AND ERRONEOUSLY AFFIRMED THE BZA'S DECISION AND INTERPRETATION OF RIVERSIDE ORDINANCE § 1341.01(a)."
 {¶ 9} In its first assignment of error, CHS claims that the trial court incorrectly applied the rules of statutory construction to section1341.01(a) and, consequently, erroneously affirmed the BZA's interpretation of "square footage" to mean the building's footprint.
 {¶ 10} When considering an administrative appeal, a court of common pleas must weigh the evidence in the record to ascertain whether there exists a preponderance of reliable, probative, and substantial evidence to support the administrative agency's decision. R.C. 2506.04; Dudukovichv. Lorain Metro. Housing Auth. (1979), 58 Ohio St.2d 202, 207,389 N.E.2d 1113; John P. Raisch, Inc. v. Board of Zoning Appeals (June 18, 1999), Montgomery App. No. 17561. Consistent with its findings, the court may affirm, reverse, vacate, or modify the decision, or remand the matter to the body appealed from with instructions to enter a decision consistent with the findings or opinion of the court. R.C. 2506.04. The common pleas court "considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Henley v. Youngstown Bd.of Zoning Appeals (2000), 90 Ohio St.3d 142, 147, 2000-Ohio-493,735 N.E.2d 433.
 {¶ 11} The standard of review to be applied by an appellate court in a R.C. 2506.04 appeal is "more limited in scope." Id., citing Kisil v.Sandusky (1984), 12 Ohio St.3d 30, 34, 465 N.E.2d 848. Under R.C. 2506.04, the court of appeals does not have the same extensive power to weigh the evidence as is granted to the common pleas court. While "[i]t is incumbent on the trial court to examine the evidence[,] [s]uch is not the charge of the appellate court." Henley, 90 Ohio St.3d at 147. An appellate court reviews the judgment of the common pleas court only on questions of law. Kisil, 12 Ohio St.3d at 34, n. 4. The appellate court's inquiry is limited to a determination of whether, as a matter of law, the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence. Id. at 34. In other words, in reviewing questions of law, the appellate court considers whether the trial court abused its discretion. Id.
 {¶ 12} In concluding that the Zoning Administrator properly determined that section 1341.01(a) applied to CHS, the BZA found that "[t]he testimony supported the Zoning Administrator's position that the outside perimeter of the building was the correct method to make the determination of the 25 percent requirement for right-of-way improvements as required by Riverside Ordinance 1341.01(a)." On review, the trial court found that the term "square footage" was ambiguous, noting that the term could rationally be interpreted to mean either the usable square footage or the footprint square footage. The court sought to resolve the ambiguity by reference to the ordinance's legislative history. The court noted:
 {¶ 13} "The Transcript contains a letter to BZA from the mayor of Riverside, Kenneth W. Culp[,] that states: `As an ex officio member of the Planning Commission, I was present in March 2001 and took part in the discussions and can attest that the discussion specified the intent of the ordinance and the Planning Commission action was that the coverage area that triggers sidewalk installation was based on the footprint of the structure and not the total square footage of a multistory building.' He adds that he was also present at the Riverside council meeting of September 6, 2001 and the discussion was the intent of the ordinance to use the square footage of the footprint of the building. This is probative evidence of legislative intent that the outside perimeter of the existing building was the correct method to make the 25% square foot determination under § 1341.01."
 {¶ 14} The court also concluded the Riverside Code of Ordinances, when viewed as a whole, did not mandate CHS's interpretation of section1341.01(a). It stated:
 {¶ 15} "[CHS] argues that the zoning code's definitions of `floor area, gross' and `floor area of a nonresidential building' correspond with [its] calculations, as well as the industry standard for the measurement of `square footage.' [The City] argues that if the City wanted to use `gross floor area' as the trigger in § 1341.01 it would have used that defined term. [The City's] argument is well-taken. The use of `square footage' rather than `gross floor area' is probative evidence that the City intended `square footage' to mean something different from `gross floor area.' On the other hand, the absence of the definition of `footprint' or lack of use of the term `footprint' is not persuasive evidence the City intended `square footage' to mean something different from square footage of the footprint of the building. The BZA's decision to use the outside perimeter of the building in determining the square footage under § 1341.01 is supported by a preponderance of reliable, probative, and substantial evidence."
 {¶ 16} Here, CHS claims that the term "square footage" has a plain and customary meaning, which the trial court improperly ignored. The school emphasizes that Allan Johnston, a certified general appraiser under the State of Ohio, Department of Commerce, Division of Real Estate, testified before the BZA that, in the real estate field and in common parlance, the term "square footage" is calculated by multiplying the building's footprint by the number of floors in the building. Brian Connair, a registered architect and the primary architect for CHS's activity center addition, agreed with that definition.
 {¶ 17} We find no error in the trial court's conclusion that "square footage" was an ambiguous term, as used in section 1341.01. As recognized by the trial court, "[r]ational arguments can be made that the term could mean either the usable square footage or the footprint square footage, as demonstrated by [CHS's] and [the City's] briefs." In its brief to the trial court, the City noted that CHS had submitted no less than five different numbers under its calculation of the increase in square footage due to the proposed activity center. It further indicated that the Zoning Administrator, a professional in the land development industry, did not agree that "square footage" necessarily means usable interior floor space. Riverside Mayor Culp also testified that the Code did not necessarily follow real estate standards. As noted by the dissenting member of the BZA, three possible interpretations of "square footage" were presented in the record — square footage of the building's footprint, the total square footage, or the usable square footage. Although the BZA and the trial court had evidence, as cited by CHS, that "square footage" meant the footprint square footage multiplied by the number of floors, the court did not abuse its discretion in concluding that "square footage," as used in section 1341.01(a), had several possible meanings.
 {¶ 18} CHS claims that the trial court failed to consider the complete record when it reviewed the BZA's interpretation of the ordinance and placed undue weight on the fact that the City used the term "gross floor area" in other ordinances but not in section 1341.01(a). The school asserts that the trial court failed to consider the following portions of Mayor Culp's testimony before the BZA:
 {¶ 19} "[T]he discussion that took place with the Planning Commission back in March of 2001 was solely about footprint. When the legislation came to the City Council later on in 2001, again, the discussion at the first reading, and the vote on the first reading, was footprint.
 {¶ 20} "We get in these situations, sometimes the language of legislation isn't as crystal clear as we would like for it to be, but because we get caught up in the situation, we recall the discussions that we have had, we assume that there have been those who know that the discussions were about footprint, and so it means footprint."
 {¶ 21} CHS argues that Mayor Culp's testimony suggests that "footprint" was used in a prior version of section 1341.01(a) and that "[i]t is simply not fair to hold CHS to a version of the ordinance that the City once intended but did not actually enact, and that contravenes the plain and accepted meaning of the term." CHS also contends that Mayor Culp advocated ignoring the plain language of the ordinance.
 {¶ 22} We find no evidence to support CHS's assertion that the trial court failed to consider the complete record. Although the trial court did not cite to every piece of available evidence before the BZA, it is apparent that the trial court considered the testimony of Mayor Culp. Moreover, a reading of Mayor Culp's testimony in its entirety reveals that he was not proposing to the BZA that it ignore the plain language of section 1341.01(a). Rather, Major Culp merely emphasized that "square footage" was unclear and the term must be considered in pari materia with the rest of the Code of Ordinances. He stated: "[Y]ou have to take a look at not just this language, but how this language interacts with all the other language that's in that section of the Code that deals with plats and subdivisions and those kinds of things. * * * You have to put everything in context. That's what you have to do."
 {¶ 23} We likewise find no fault with the trial court's consideration of other ordinances in concluding that the BZA's interpretation of section 1341.01 was reasonable. CHS emphasizes that the term "footprint" was used in section 1173.01, and that the City should have used the term "footprint" in section 1341.01(a) if that was intended. In our judgment, the fact that section 1341.01(a) used neither "gross floor area" nor "footprint" merely highlights that the term "square footage," as used in that ordinance, is ambiguous. The BZA and the trial court could reasonably conclude that "footprint square footage," rather than "gross floor area," was the intended meaning of the ordinance.
 {¶ 24} CHS contends that the trial court improperly considered post-enactment statements regarding the intended meaning of "square footage" in interpreting section 1341.01(a). Specifically, CHS claims that the trial court erroneously considered the statements of Riverside Mayor Culp that the legislators and the Planning Commission intended "square footage" to refer to the building's footprint as legislative history. Although Mayor Culp's statements do not qualify as legislative history, see, e.g., Gillihan v. Gump (Idaho 2004), 92 P.3d 514, 518-519, his statements were supportive of the interpretation of section 1341.01
by the Zoning Administrator and the Planning Commission. The Planning Commission had notified the BZA that, on January 27, 2003, it had discussed the placement of sidewalks and curbs at CHS, and that the Commission had "reaffirmed that the basis for the calculations in Section1341.01 was that the `footprint' of the primary structure in relation to the `footprint' of the proposed addition is to be used as the determinate factor for the 25 percent requirement, as originally discussed at their March 2001 meeting." (Emphasis in original.) Accordingly, we cannot say, as a matter of law, that the trial court erred in determining that the BZA's interpretation of section 1341.01(a) was supported by a preponderance of reliable, probative and substantial evidence.
 {¶ 25} Finally, CHS asserts that the BZA's interpretation of section1341.01 leads to absurd results. It argues that using "footprint square footage" would frustrate the purpose of section 1341.01, because improvements and addition projects that added floors to existing structures would escape application of the ordinance, even though they would have the same impact on vehicular and pedestrian traffic as projects that increased the footprint square footage. We find nothing absurd in the result that sidewalks and curbs may be required when the improvement or addition greatly increases the footprint dimensions of a building, thus potentially affecting traffic flow around the improved building.
 {¶ 26} The first assignment of error is overruled.
 {¶ 27} "II. THE TRIAL COURT DID NOT CONSIDER THE ENTIRE RECORD, AND ERRED IN AFFIRMING THE BZA'S CONCLUSION THAT RELEVANT FACTORS EXIST TO APPLY §§ 1341.01(B) TO CHS."
 {¶ 28} In its second assignment of error, CHS contends that the trial court failed to consider all of the evidence in the record and erred in determining that relevant conditions existed at CHS that would justify requiring CHS to install curbs and sidewalks.
 {¶ 29} In its decision, the BZA concluded that "[t]he Testimony clearly supported the need for right-of-way improvements and that the application of Riverside Ordinance 1341.01(b) was appropriate for Permit Application P-02-1132." The trial court upheld the BZA's ruling, stating:
 {¶ 30} "It is uncontested that the additional gym will not generate any new traffic, either from cars or pedestrians, to or from the school because it is designed to service the existing student population. However, Appellee argues that the City's ability to require sidewalks is not limited solely to consideration of the increase in pedestrian and vehicular traffic caused by the proposed addition. Appellee's argument has merit. Section 1341.01(b) states that: `the requirement to install a sidewalk and/or curb shall be made by the Zoning Administrator, based upon vehicular and pedestrian traffic reasonably to be expected in the neighborhood and upon all other relevant conditions found to exist within the applicable area.' (Emphasis added). The Zoning Administrator made the finding that `curbs and sidewalks will enhance safety for all users of Linden Ave. on the south side from the Carroll High School property to the connection point of the Microtel property.' Mayor Culp gave testimony that all development and redevelopment sites have been required to install sidewalks and curbs for safety purposes because of the changing character of the area and growing population. Appellant argues that sidewalks and curbs would subject school children to increased exposure to the traffic on Linden Ave. Joseph Sens, the principal of Carroll High School testified that due to the death of a student trying to cross the street twenty years ago a fence was put in to restrict movement of kids so that they are directed to a crosswalk. Appellant argues that installation of sidewalks and curbs would negate the safety measure of the fence and allow children free access to the roadway. However, there was testimony given that cars pull over off the pavement in front of the fence to either pick up or drop off students. Appellant does not explain how the free access to the roadway that a sidewalk would provide is less safe than that provided by the grass/mud area between the street and the fence where students currently go when picked up or dropped off. On the other hand, the City's consulting engineer Lockwood, Jones, and Beals conducted a traffic study and determined that `a sidewalk is not believed to be detrimental to traffic or pedestrian safety.' Mr. Sens' belief that sidewalks will increase the number of spontaneous crossings across Linden Avenue by students is merely speculation."
 {¶ 31} CHS complains that the trial court dismissed the testimony of Mr. Sens and ignored correspondence from the Riverside police chief concerning pedestrian safety in the area of Linden Avenue in front of the school. We are unpersuaded that the trial court failed to consider relevant evidence, and it is not the province of this court to weigh the evidence before the trial court and the BZA. The trial court properly concluded that the BZA's conclusion was supported by the preponderance of reliable, probative, and substantial evidence.
 {¶ 32} The second assignment of error is overruled.
 {¶ 33} "III. THE TRIAL COURT ERRED IN DISMISSING CHS'S ARGUMENT THAT § 1341.01 IS UNCONSTITUTIONAL."
 {¶ 34} In its third assignment of error, CHS claims that the trial court failed to consider CHS's constitutional argument and inappropriately treated its argument as a facial attack on the ordinance. CHS contends that, as applied to the school, section 1341.01
"discriminates against it as a single-story building addition, and is unconstitutional as violative of CHS's equal protection rights."
 {¶ 35} "The constitutionality of a zoning ordinance may be attacked and injunctive relief from its prohibitions obtained in a declaratory judgment action brought pursuant to R.C. Chapter 2506. Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 526 N.E.2d 1350. However, there is a strong presumption in favor of the constitutionality of a zoning ordinance. Goldberg Cos., Inc. v. Richmond Heights City Council,81 Ohio St.3d 207, 1998-Ohio-456, 690 N.E.2d510; Valley Auto Lease ofChagrin Falls, Inc. v. Auburn Twp. Bd. of Zoning Appeals (1988),38 Ohio St.3d 184, 527 N.E.2d 825. The burden of proof is on the party challenging its constitutionality. Goldberg, supra." Mays v. Board OfTrustees Of Miami Tp., Montgomery App. No. 18997, 2002-Ohio-3303. {¶36} "The limits placed upon government action by the Equal Protection Clauses of the United States Constitution and Ohio Constitution are `essentially identical.' Beatty v. Akron City Hosp. (1981),67 Ohio St.2d 483, 491, 21 O.O.3d 302, 424 N.E.2d 586. Equal protection guarantees do not invalidate all legislative classifications but rather require reasonable grounds supporting disparate treatment between those within and outside of a designated class. Id." Akron ex rel.Christman-Resch v. City of Akron, Summit App. No. 22140, 2005-Ohio-715. When a statute or ordinance facially establishes classifications but no suspect class or fundamental right is involved, unequal treatment of classes or persons may be upheld where a rational basis exists to support the inequality. Cincinnati City School Dist. Bd. of Edn. v. Walter
(1979), 58 Ohio St.2d 368, 373, 12 O.O.3d 327, 390 N.E.2d 813; City ofCleburne, Tex. v. Cleburne Living Ctr. (1985), 473 U.S. 432, 440,105 S.Ct. 3249, 87 L.Ed.2d 313 ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."). Legislative classifications based on gender, race, national origin, or alienage are subject to heightened scrutiny.
 {¶ 37} Facially neutral legislation may be subject to equal protection attack where the statute or ordinance has been implemented in a discriminatory fashion. When challenging the application of a facially neutral statute or ordinance, the plaintiff must establish (1) that the application had a discriminatory effect, i.e., that similarly situated persons or entities were treated differently, and (2) that the unequal application was motivated by a discriminatory purpose. Farm LaborOrganizing Commt. v. Ohio State Hwy. Patrol (C.A.6 2002), 308 F.3d 523,533-534; Strickland v. Alderman (C.A.11 1996), 74 F.3d 260, 264;Washington v. Davis (1976), 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d (a facially neutral statute which had a differential racial effect does not violate the equal protection clause absent a discriminatory purpose).
 {¶ 38} Although CHS asserts that it has made an "as applied" challenge to section 1341.01, it has not presented any evidence that it had been treated differently from other properties in Riverside that have constructed building additions. Further, no claim has been made that Riverside was motivated by a discriminatory purpose in applying the regulation as it did. Thus, CHS has not established that section 1341.01, as applied to it, violates the equal protection clause. In addition, we believe there is a rational basis for requiring the installation of sidewalks and/or curbs based on the footprint square footage of the proposed addition or improvement, considering that an addition or improvement with a larger footprint would reduce the undeveloped land around the principal building to a greater extent than a multi-story addition with the same gross square footage.
 {¶ 39} The third assignment of error is overruled.
 {¶ 40} The judgment of the trial court will be affirmed.
Grady, J. and Young, J., concur.
(Hon. Frederick N. Young sitting by assignment of the Chief Justice of the Supreme Court of Ohio).